## Commonwealth v. Beitman

*Drew S. Dorfman,* for Department of Environmental Resources.

*Henry C. Markofski* and *Barry W. Kerchner,* for appellant.

*Charles F. Fitzpatrick,* for Amity Township.

BROUGHTON, Chairman, August 20, 1974.—This matter is before the board on an appeal filed by David D. Beitman ("appellant") from the grant of a sewerage permit, no. 0672409, by the Department of Environmental Resources ("department") to Amity Township Municipal Authority. ("Amity Authority")

Amity Authority filed an application for this sewerage permit to construct a collection system, interceptor sewers, pumping stations and a sewage treatment plant, with the department at its regional office in West Reading in February 1972.

Appellant became aware of the fact that this application had been filed; he notified the department that he objected to the issuance of such a permit, and, in August 1972, he attended a meeting at the offices of the department in West Reading for the purpose of further discussion of his objections.

By letter dated October 13, 1972, the department, by John P. Durr, P. E., Regional Sanitary Engineer, notified appellant that it had recommended approval of the permit requested by Amity Authority. In this letter, Mr. Durr advised appellant that he could appeal such action to this board.

Appellant filed an appeal to this board from said action of the department on or about October 24, 1972.

On or about February 5, 1973, the Department filed a motion to dismiss this appeal, alleging that, since the requested permit had neither been granted nor denied, no action had been taken by the department from which an appeal would lie. Appellant filed an answer to this motion, and on March 1, 1973, we denied the motion, without opinion.

We scheduled a hearing on the merits of this appeal for March 22, 1973, and on that date, appellant, the department and Amity Authority were represented. After a short colloquy among Gerald H. Goldberg, Esq., then a member of this board, who was assigned to preside over this appeal and counsel for the department, appellant and Amity Authority, it was stipulated that all proceedings in the case would be continued until the department took final action with regard to the Amity Authority application. It was also stipulated that Amity Authority would become a party to this proceeding without formal petition for intervention.

On April 9, 1973, the department issued sewerage permit no. 0672409 to Amity Authority, and this

appeal was re-activated. A hearing on the merits thereof was held, before hearing examiner Louis R. Salamon, Esq., on September 27, 1973.

In support of his appeal, appellant contends:

1. That it was improper and unlawful for the department to issue this permit for sewage collection and treatment facilities as those treatment facilities (a sewage treatment plant) would be located in an area which is located in a flood plain and which has been flooded from time to time;

2. That it was improper and unlawful for the department to issue this permit for sewage collection and treatment facilities to Amity Authority, for the reason that Amity Authority had elected to disregard the original Master Plan for Berks and Montgomery Counties, developed in accordance with the requirements contained in the Pennsylvania Sewage Facilities Act, of January 24, 1966, P. L. (1965) 1535, as amended, 35 PS §750.1, et seq., in that Amity Authority would construct facilities which would not serve all of Amity Township.

There were only two witnesses who gave testimony at this hearing, appellant and John Blenk, an engineer for the company which planned and designed the facilities which Amity Authority intends to have constructed, who was called by appellant as for cross examination. Neither the department nor Amity Authority presented testimony.

## FINDINGS OF FACT

1. Appellant, a mechanical and electrical engineer, owns a home situate at 325 Old Philadelphia Pike, Douglassville, Pa.

2. Appellant's home is located approximately 1,000 feet east of the location which has been proposed for the sewage treatment plant to be owned and operated

by Amity Authority, as authorized under department sewerage permit no. 0672409, issued to Amity Authority on April 9, 1973.

3. This proposed sewage treatment plant will be situate at a point approximately 400 feet northeast of the easterly side of the Schuylkill River.

4. This proposed sewage treatment plant will be situate at a point which is between 140 feet and 143 feet above sea level.

5. Appellant's home is situate at a higher elevation above sea level by approximately ten feet, than the elevation above sea level of this proposed sewage treatment plant.

6. When the Schuylkill River flooded in June 1972, as the result of Hurricane Agnes, the waters rose to an elevation of 157 feet above sea level at the proposed location of this sewage treatment plant.

7. When the Schuylkill River flooded in June 1972, as the result of Hurricane Agnes, the waters rose to a point where there was nine feet of water above the first floor level of appellant's home.

8. There is a "continuous run" of homes downriver from appellant's home extending into West Pottsgrove and into Pottstown. The elevations above sea level of these homes are approximately the same as the elevation above sea level of appellant's home. These homes were flooded in June 1972.

9. The land upon which this sewage treatment plant is proposed to be constructed was completely flooded in June 1972.

10. The Schuylkill River flooded in 1942 and in 1945, and on each occasion the waters rose to a point where there was six inches to one foot of water above the first floor level of appellant's home.

11. Mast Engineering Company, Inc., was retained by Amity Authority for the purpose of planning and

designing the sewage collection and treatment facilities which have been authorized under department sewerage permit no. 0672409.

12. Mast Engineering Company, Inc., considered the following sites for treatment of the sewage generated in Amity Township:

a. the site of the existing Amity Township Sewage Treatment Plant, the elevation above sea level of which is several feet higher than the elevation above sea level of the site which was chosen;

b. the site which was chosen;

c. the existing Pottstown Sewage Treatment Plant;

d. a site situate downriver from the site which was chosen and opposite to the site which was chosen (the elevations of this site and the site which was chosen are approximately the same).

13. No explanation was presented to this board at the hearing of September 27, 1973, as to the reasons for the choice of the site which was chosen for this proposed sewage treatment plant.

14. In order to prevent flooding of this proposed sewage treatment plant, Mast Engineering Company has provided for the installation of flood pumps which will be engaged if the river water backs up into the plant's outfall line and which will pump water and sewage into a manhole, and for the construction of a dike, the highest point of which will be 148 feet above sea level, which will encircle this proposed sewage treatment plant.

15. The decision that such a dike was to be constructed to a height of 148 feet above sea level was made as the result of the consideration of several factors, to-wit:

a. plans of the Pennsylvania Department of Transportation which indicated that the high water mark at the area of the Douglassville Bridge (situate some

800 feet downriver from the site of the proposed plant was 144.7 feet above sea level).

b. personal contact with residents whose homes are situate in the vicinity of the site of the proposed plant.

c. the recommendations of the department.

16. No evidence was presented to this board at the hearing on September 27, 1973, as to the basis for any recommendations by the department that this dike should be 148 feet above sea level.

17. This proposed sewage treatment plant has been designed to service the populated areas of Amity Township, and certain portions of Union, Douglas and Exeter Townships; this proposed sewage treatment plant has the capacity to service the above-mentioned areas to the year 1990.

18. It would appear that the only entity other than Amity Township which is interested in causing sewage generated within its borders to be conveyed for treatment at this proposed sewage treatment plant is Union Township.

## DISCUSSION

I. Appellant has proved that the site upon which Amity Authority proposes to construct its sewage treatment plant is subject to flooding.

He has proved that should the waters of the Schuylkill River rise to the extent that they rose during the flood of June 1972 in the area of this proposed plant, this plant will be flooded.

He has demonstrated that if this proposed plant is flooded, untreated sewage will reach the waters of the Commonwealth, will flow downriver, will adversely affect a public water supply and will add, measurably, to the damage which would be caused to downriver property owners, including himself.

We have found no Pennsylvania statute or depart-

mental regulation which expressly prohibits the construction of a sewage treatment plant on land which is subject to flooding.

We do know, however, that the department is cognizant of the problems which could arise by virtue of the construction of a sewage treatment plant in such an area. On page 26 of its Sewerage Manual, Publication No. 1, 3rd Edition, Bureau of Water Quality Management of the Department, the following provision appears:

"40. *Sewage Treatment Works*

"41. *General*

"41.1 . . . .

"41.2 . . . . Plants should be located at an elevation which is not subject to flooding or otherwise be adequately protected against flood damage. Plants constructed with public funds shall not be located within the 100 year flood plain unless such facilities are so constructed or protected to prevent flood damage . . ."

We heard testimony from engineer Blenk that this proposed sewage treatment plant will be protected against flood damage by virtue of the installation of flood pumps which will be engaged if the river water backs up into the plant's outfall line and which will pump water and sewage into a manhole, and by virtue of the construction of a dike, the highest point of which will be 148 feet above sea level, which will encircle the plant.

Mr. Blenk testified that the decision as to the height of this dike was made, in part, as the result of the recommendations of the department.

Unfortunately, no evidence was presented to this board which sets forth the basis for these recommendations. We do not know whether the site of this proposed sewage treatment plant is situate within the 100-year flood plain. We do not know the frequency

with which the waters of the Schuylkill River could be expected to rise in excess of 148 feet above sea level at the site of this proposed plant and overtop the dike and flood the plant. Perhaps the chances of this happening are so remote that it was reasonable for Amity Authority to plan for a dike which is 148 feet above sea level. Perhaps the chances of this happening are so likely that it would be prudent for Amity Authority either to choose another location the elevation above sea level of which is higher than the elevation above sea level of the site which was chosen or to construct its dike to an elevation which is higher than 148 feet above sea level.

We find that appellant has sufficiently alerted this board to the problems which could arise by virtue of the decision to locate this proposed sewage treatment plant on a site which is subject to flooding so that either Amity Authority or the department has the duty to come forth with clear and concise evidence as to whether this decision was prudent.

Article I, §27, (page 95 of Purdon's Supp.) of the Constitution of Pennsylvania, provides as follows:

"§27. Natural resources and the public estate

"The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.
Adopted May 18, 1971."

As we stated in our interlocutory amended adjudication in Commonwealth of Pennsylvania, Department of Environmental Resources v. Mrs. Cyril G. Fox, Natural Lands Trust, Inc., and Community College

of Delaware County, E. H. B. Docket No. 73-078 (issued June 18, 1973) and in our final adjudication in that same case, E. H. B. Docket No. 73-078-B (issued May 16, 1974), the agency for the trustee, Commonwealth, charged with the duty to decide whether a permit to construct sewage treatment facilities should be granted is the Department.

The statutory provisions which extend this duty to the department and which set forth the various factors which the department must consider in reaching its decision are found in the Pennsylvania Sewage Facilities Act, supra, The Clean Streams Law, Act of June 22, 1937, P. L. 1987, as amended, 35 PS §691.1, et seq., and the Act of December 3, 1970, P. L. 834, amending The Administrative Code of April 9, 1929, P. L. 177, as amended, 71 PS §510-1, et seq. These factors are further delineated in the Rules and Regulations adopted by the Environmental Quality Board pursuant to the Pennsylvania Sewage Facilities Act, supra, and The Clean Streams Law, supra.

It can easily be argued that by virtue of the existing statutory and regulatory provisions, to which we have referred above, the department has the duty to consider:

1. Whether the location chosen for this proposed sewage treatment is proper, in view of the fact that this location is subject to flooding; and

2. Whether the plans which have been made to protect this proposed plant (at said specific location) from flooding are sufficient and prudent. See Chester County Health Department v. G. William Jacobs, E. H. B. Docket No. 73-097-S (issued August 8, 1974); Commonwealth of Pennsylvania Department of Environmental Resources v. Creel Brothers, E. H. B. Docket No. 73-071-B (issued March 25, 1974).

Furthermore, we hold, that the department *must*

make these considerations by virtue of the existence of the trust mandate which is found in article I, §27, supra. See Commonwealth of Pennsylvania Department of Environmental Resources v. Mrs. Cyril G. Fox Natural Lands Trust, Inc. and Community College of Delaware County, supra, (both adjudications).

Since we did not learn whether the department made these considerations prior to the granting of sewerage permit no. 0672409 to Amity Authority at the hearing on September 27, 1973, we will remand this matter to the department and we will direct the department and Amity Authority to submit to this board and to appellant answers to the following questions within 20 days from the date of this adjudication:

1. Is the specific location chosen for this proposed sewage treatment plant within the 100-year flood plain?

2. To what elevation above sea level would the waters of the Schuylkill River be expected to rise at or near to the specific location chosen for this sewage treatment plant in the event of the occurrence of a flood the frequency of which is

    a. one year?
    b. five years?
    c. twenty-five years?
    d. one hundred years?

3. Is the construction of a dike to an elevation of 148 feet above sea level, which dike would completely encircle this proposed sewage treatment plant, sufficient to protect this plant from being completely flooded in the event of the occurrence of a flood the frequency of which is from one to 100 years?

When we receive the answers to these questions, we will be better able to decide whether the decision of the department to grant this permit to Amity Authority was proper. There remains the possibility

that further testimony will be needed in this matter, but such a decision as to the need for further testimony will abide the submission of the requested answers by the department.

II. Appellant has contended that his appeal should be sustained because Amity Authority has elected to disregard the original Master Plan for Berks and Montgomery Counties, developed in accordance with the requirements contained in the Pennsylvania Sewage Facilities Act, supra, in that Amity Authority would construct facilities which would not serve all of Amity Township.

Appellant also contends that his appeal should be sustained because, in granting this permit to Amity Authority for a treatment facility which will serve only a portion of Amity Township and Union Township, the department has breached its duty, which arises under and by virtue of The Clean Streams Law, supra, the Pennsylvania Sewage Facilities Act, supra, and the Rules and Regulations adopted by the Environmental Quality Board pursuant to said statutes, to consider regional comprehensive plans for sewage collection and treatment facilities.

We are not satisfied that appellant has presented sufficient testimony in proof of these contentions, and we see no reason to require that the department supply us with evidence in this regard.

We learned from the testimony of Mr. Blenk that this proposed sewage treatment plant was designed so that it would have sufficient capacity to adequately treat sewage generated in the populated areas of Amity Township, in Douglas Township, in Exeter Township and in Union Township.

If the department deems it to be necessary and proper to require that the entire area of Amity Township be served by this plant and|or that Douglas and

Exeter Townships cause sewage generated within their borders to be conveyed to this plant for treatment, the department can and should issue orders to each said municipal entity accordingly. Clearly, such authority has been granted to the department in sections 4, 5 and 203 of The Clean Streams Law, supra, 35 PS §691.4, 35 PS §691.5 and 35 PS §691.203.

## CONCLUSIONS OF LAW

1. The Environmental Hearing Board has jurisdiction over the parties and the subject matter of this appeal.

2. Where it has been proved that the site upon which a sewage treatment plant is to be constructed is subject to flooding, the department, in deciding whether to grant a permit for such facility, is required by The Clean Streams Law, supra, the Pennsylvania Sewage Facilities Act, supra, and article I, §27, of the Constitution, supra to determine whether such site is a proper one and to determine whether plans which have been made to protect such proposed facility from flooding are sufficient and prudent.

3. The department offered no evidence in this matter. Therefore, the Environmental Hearing Board has no information from which we can conclude that such determinations were made by the department or that the results of those determinations showed that Amity Authority will adequately protect such proposed facility from flooding.

4. Where the department has failed to offer evidence to the Environmental Hearing Board that it has complied with its statutory duties and its constitutional mandate, we may remand a matter to the department and require that such evidence be furnished by the department to this board.

5. Appellant has failed to prove that the department has breached its duty, which arises under and by virtue of The Clean Streams Law, supra, the Pennsylvania Sewage Facilities Act, supra, and the Rules and Regulations adopted by the Environmental Quality Board pursuant to said statutes, to consider regional comprehensive plans for sewage collection and treatment facilities for Amity Authority, Amity Township and surrounding communities.

## ORDER

And now, August 20, 1974, it is ordered as follows:

This matter is remanded to the department. Within 20 days from the date of this adjudication, the department shall, in conjuction with Amity Authority, the permittee, submit to this board and to appellant, David D. Beitman, the answers to the following questions:

1. Is the specific location chosen for this proposed sewage treatment plant within the 100-year flood plain?

2. To what elevation above sea level would the waters of the Schuylkill River be expected to rise at or near to the specific location chosen for this sewage treatment plant in the event of the occurrence of a flood the frequency of which is

   a. one year?

   b. five years?

   c. twenty-five years?

   d. one hundred years?

3. Is the construction of a dike to an elevation of 148 feet above sea level, which dike would completely encircle this proposed sewage treatment plant, sufficient to protect this plant from being completely

flooded in the event of the occurrence of a flood the frequency of which is from one to 100 years?

Upon receipt by this board of the answers to the questions set forth above, this board will notify the parties as to whether we deem it to be necessary to take further testimony in this matter. The board retains jurisdiction over this matter to consider the answers which we have directed the department to submit to us.