Maxwell Swartwood et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondents.
The Milnes Company, Inc., Intervenor.

Argued December 10, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judge MENCER did not participate.

*Gerald C. Grimaud,* for petitioners.

*Peter Shelley,* Assistant Attorney General, for respondents.

*Ralph E. Kates, III, Griffith, Aponick* & *Musto,* for intervenors.

OPINION BY JUDGE WILKINSON, JR., January 23, 1981:

This is an appeal from an adjudication of the Environmental Hearing Board (Board) affirming the decision of the Department of Environmental Resources (Department) which affirmed the decision of the Falls Township Board of Supervisors (Supervisors) to supplement the Official Sewage Facilities Plan (Official Plan) of Falls Township (Township) pursuant to the Pennsylvania Sewage Facilities Act (Act), Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §750.1 et seq., and the regulations promulgated thereunder.

Petitioners, citizens who live in the project area, advance a multitude of arguments in this case; however, the substance of the appeal involves the

question of whether the Supervisors, the Department and the Board should have required the submission of a "revision", instead of a "supplement", to the Township's Official Plan. The distinction between these two procedures is that a "revision" would necessitate review by local planning agencies, whereas a "supplement" involves review by only the Township Sewage Enforcement Officer and the Supervisors.

The findings of the Board, which we find to be supported by substantial evidence in the record, are as follows. The public housing project at issue is sponsored by the United States Department of Housing and Urban Development (H.U.D.) and the Wyoming County Housing Authority (Housing Authority). The project is known as a "turnkey" project which provides for the developer, The Milnes Company (Milnes), Intervenor herein, to select and purchase the sites at which to locate the project within the Township. The developer is responsible for preparing a proposal which satisfies all the requirements of the Housing Authority and H.U.D.

The Supervisors entered into a cooperation agreement with the Housing Authority regarding this project. The Supervisors also passed a resolution authorizing the submission of an application for public housing to H.U.D. by the Housing Authority. Before ultimate approval will be given by H.U.D., the developer must have received all necessary local permits from the Township. Here, the "supplementing" of the Official Plan is a preliminary step taken by the developer in order to obtain the required Township sewage permits.

Petitioners submitted a lengthy statement of objections to these "supplements", asking the Department to either disapprove the "supplements", or to require "revisions", thereby necessitating review by both the Township and the Wyoming County Planning Commissions.

Following receipt of these objections, the regional officials of the Department held a conference on April 23, 1979, at which all interested parties were present, in order to review the objections. The Department was represented by three of its employees from the Bureau of Environmental Control. As a result of this conference, site investigations were conducted on May 2, 1979.

On June 1, 1979, the Department notified the Township and Petitioners that they concurred with the Supervisors' decision to "supplement" the Township's Official Plan. Petitioners promptly filed a notice of appeal and a petition for supersedeas with the Board.

After two days of evidentiary hearings, the Board, in affirming the Department's decision, concluded, *inter alia*, that the decision as to which procedure to use ("supplement" or "revision") was an administrative one to be made by the Department. The Hearing Examiner concluded that the Petitioners failed to prove an abuse of discretion by the Department in its approval of the Township's Official Plan "supplement". This adjudication by the Board is the subject of the instant appeal.

Petitioners have presented several issues for our review. They contend that the Department abused its discretion in approving the "supplements", rather than requiring "revisions", in that it did not consider (1) gross irregularities in the Township's action in adopting the "supplements"; (2) the wrongful circumvention of local planning agencies; and (3) inadequacies in the Township's Official Plan.

Further, Petitioners argue that neither the Township nor the Department considered Article I, Section 27 of the Pennsylvania Constitution. They contend that no effort was made to locate the housing projects in or around "built up" areas so as to minimize harmful environmental effects, to rely on

public sewage treatment rather than on-lot disposal, and to preserve open space, natural and agricultural resources.

Finally, Petitioners contend that the Board abused its discretion in concluding that the decision as to which procedure to use when amending an Official Plan is an administrative one to be made by the Department. We disagree with the foregoing contentions and affirm the Board's adjudication.

Initially, we must note the procedural posture of this appeal. Petitioners are not, as the Department contends, proceeding under what amounts to a "private request" procedure for a revision under 25 Pa. Code §71.17, wherein the resident or property owner may request the Department to order a revision only where the person can show that the Official Plan is inadequate to meet the residents' sewage disposal needs. Rather, Petitioners are simply opposing the approval of the "supplements" and asking that the Department require the Township to submit a revision to its Official Plan, in order that the local planning agencies may review the site selection for the proposed housing projects. Thus, the appeal was properly before the Board.

Turning to the merits of the case, we note that the Act[1] and the regulations promulgated thereunder[2] specifically set forth the statutory framework for sewage planning and the requirements and procedures involved in revising or supplementing an Official Plan.

After an examination of these provisions, as well as a careful review of the voluminous record in the case, we must conclude that there has been full compliance with the legislative and administrative requirements for the addition of a "supplement" to an Official Plan. Further, we conclude that neither the Department nor

---

[1] Section 5 of the Act, 35 P.S. §750.5.

[2] See, 25 Pa. Code §§71.14(a), 71.15, 71.16.

the Board abused its discretion in approving these "supplements."

In the instant case, the record reveals the "supplements" were reviewed by the Township Sewage Enforcement Officer and were approved by the Supervisors in a unanimous vote at the March 12, 1979 meeting.[3] The Department, after conducting a site inspection and concluding that the on-lot sewage disposal mechanism detailed in the Official Plan would adequately meet the sewage disposal needs of the proposed subdivision, concurred with the Supervisors' decision to approve the "supplements". Thus, we find total compliance with 25 Pa. Code §71.15(c).

Petitioners, however, assert that both the Department and the Board abused their discretion in (1) not requiring the involvement of local planning agencies in site selection, and in (2) failing to consider that the proposed apartment buildings were to be located in "open space", what is now agricultural and woodland areas.

Clearly, local planning agency review is not required in this case. The Department made what the Board correctly characterized as a purely administrative decision with respect to the approval of

---

[3] Petitioners strenuously objected to alleged "irregularities" in the Township Supervisors' adoption of the supplements. For example, one Supervisor testified that while he understood that they had a right to turn down as well as approve the "supplements", he felt that they did not have enough knowledge to either reject or permit the "supplements" and thus "approval" was given so that the "supplements" would be put into the hands of the professionals at the Department. Suffice it to say that this Court is not a proper forum for considering any objections Petitioners may have with regard to the actions of Township Supervisors in approving the "supplements". *See,* The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §65101 et seq.

"supplements." This determination eliminates the requirement of planning agency review.[4]

Moreover, we conclude that neither the Department nor the Board erred with regard to consideration of the land use planning issues relating to site selection.

> [I]t is not a proper function of the [Department] to secondguess the propriety of decisions [or lack thereof] properly made by individual local agencies in the areas of planning, zoning and such other concerns of local agencies, even though they obviously may be related to the plans approved. Moreover, impropriety related to matters determined by those agencies is the proper subject for an appeal from or a direct challenge to the actions of those agencies as the law provides, not for an indirect challenge through the [Department].

*Delaware County Community College v. Fox*, 20 Pa. Commonwealth Ct. 335, 351, 342 A.2d 468, 478 (1975), *appeal dismissed as moot*, 475 Pa. 623, 381 A.2d 448 (1977). The Court's subsequent discussion of this issue is especially applicable to the case at bar:

> The legitimate public interest in keeping certain lands as open space obviously requires that a proper determination of the use to which land shall be adapted must be made, but again this is clearly not a statutory function of the [Department]. On the contrary, we believe that such a determination clearly is within the statutory authority not of the [Department] but of the various boroughs, townships, counties,

---

[4] Petitioners have herein challenged the adequacy of the Official Plan. Under 25 Pa. Code §71.16(d), the Township's Official Plan was approved by default. Petitioners failed to appeal this administrative inaction to the Board and are precluded from collaterally attacking its validity here.

and cities of the Commonwealth pursuant to a long series of legislative enactments. Among these enactments is the Municipalities Planning Code which specifically empowers the governing bodies of these governmental subdivisions to develop plans for land use and to zone or to regulate such uses.

*Id.* at 357-58, 342 A.2d at 481-82. (Footnote omitted.)

In a related argument, Petitioners assert that Article I, Section 27 of the Pennsylvania Constitution was not given adequate consideration by the Department.[5] The Board in its adjudication concluded that the Department failed to perform the required balancing of social and economic benefits against environmental harm. *See, Payne v. Kassab,* 11 Pa. Commonwealth Ct. 14, 312 A.2d 86 (1973), *aff'd,* 468 Pa. 226, 361 A.2d 263 (1976). The Board, however, properly conducted its own examination of the exhaustive record and concluded that the environmental impact of the proposed projects would be negligible, while the social and economic benefits appeared to be significant. *See, Concerned Citizens for Orderly Progress v. Department of Environmental Resources,* 36 Pa. Commonwealth Ct. 192, 387 A.2d 989 (1978).

*Payne v. Kassab, supra,* also directed that this Court, in order to assure that the prescribed constitutional standards were met, make two additional inquiries. First, the Court must be satisfied that all applicable statutes and regulations relevant to the protec-

---

[5] Article I, Section 27 of the Pennsylvania Constitution states:
The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

tion of the Commonwealth's natural resources have been complied with. Here, such compliance is obvious. Second, the record must demonstrate a reasonable effort to reduce the environmental incursion to a minimum. Our own review of the record indicates that such an effort was made. We are therefore able to conclude that the requirements of Article I, Section 27 have been satisfied.

In affirming the adjudication of the Board, we are mindful that, in the absence of a purely arbitrary exercise of an agency's duties or functions, we may not substitute judicial discretion for administrative discretion in matters, such as these, which involve technical expertise and which are clearly within the special knowledge and competence of the members of the Board. *See, Harman Coal Co. v. Department of Environmental Resources*, 34 Pa. Commonwealth Ct. 610, 384 A.2d 289 (1978).

After careful consideration, we must conclude that all of the necessary findings of fact are supported by substantial evidence, that there has been no error of law and that there has been no manifest and flagrant abuse of discretion by the Board in affirming the Department's administrative decision to approve the "supplements" at issue.

Accordingly, we will enter the following

ORDER

AND NOW, January 23, 1981, the adjudication of the Environmental Hearing Board, docketed at 79-068-W and dated November 5, 1979, dismissing the appeal of Petitioners, is hereby affirmed.