Marcon, Inc. and Delaware Sewer Company, Petitioners *v.* Commonwealth of Pennsylvania, Department of Environmental Resources et al., Respondents.

Argued May 12, 1983, before Judges BLATT, MAC-PHAIL and BARBIERI, sitting as a panel of three.

*Charles B. Zwally*, with him *Daniel L. Sullivan, Shearer, Mette & Woodside*, for petitioners.

*Terry R. Bossert*, with him *Peter Shelley, McNees, Wallace & Nurick*, for respondents.

OPINION BY JUDGE BLATT, August 1, 1983:

Marcon, Inc. and Delaware Sewer Co. (petitioners) appeal here an order of the Environmental Hearing Board (Board) which set aside certain permits granted them by the Department of Environmental Resources (DER).

The petitioners are a real estate development corporation and its wholly owned subsidiary. In order to develop a tract of land in Pike County, Pennsylvania, for residential use, they sought a National Pollutant Discharge Elimination System (NPDES) permit from the DER which would authorize them to discharge treated sewer effluent from their treatment facility to a tributary of Little Bushkill Creek referred to in the record as Sand Spring Run. When the permit was granted, several nearby landowners, mainly hunting and fishing clubs (clubs), appealed the issuance to the Board, which then reversed the DER and set aside the permit as violative of Article I, Section 27 of the Pennsylvania Constitution,[1] Section 5(a)(2) of The Clean Stream Law, Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §691.5(a)(2), and 25 Pa. Code §§95.1(b) and (c). The appeal to this Court followed.

Our scope of review of Board decisions is limited to a determination of whether or not constitutional rights were violated, an error law was committed or if any necessary finding of fact was not supported by substantial evidence. *East Pennsboro Township Authority v. Department of Environmental Resources,* 18 Pa. Commonwealth Ct. 58, 334 A.2d 798 (1975).

The petitioners argue here that the Board erred in placing the burden upon the DER (and therefore

[1] The Board correctly applied the three-prong test of *Payne v. Kassab,* 11 Pa. Commonwealth Ct. 14, 312 A.2d 86 (1973), *aff'd,* 468 Pa. 226, 361 A.2d 263 (1976), and stated in its conclusions:
(1) there was not compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources; (2) the record does not demonstrate a reasonable effort to reduce the environmental incursion to a minimum; (3) the environmental harm which will result from the issuance of these permits clearly outweighs the benefits which will be derived therefrom.

upon the petitioners, who were the beneficiaries of the DER's actions) to prove that the environment would not be harmed by the issuance of the sewage permit. The petitioners cite to 25 Pa. Code §21.101 (c)(3) which provides that:

> (c) A party appealing an action of the Department shall have the burden of proof and burden of proceeding in the following cases unless otherwise ordered by the Board:
>
> . . . .
>
> (3) When a party who is not the applicant or holder of a license or permit from the Department protests its issuance or continuation.

It is clear that the regulation does place the initial burden upon the protesting clubs in this case. That burden, however, was to show, on the record produced before the Board, that the issuance of the permit was arbitrary or amounted to an abuse of discretion. The Board, of course, is clearly empowered to substitute its discretion for that of the DER. *See Warren Sand & Gravel Co. v. Department of Environmental Resources*, 20 Pa. Commonwealth Ct. 186, 341 A.2d 556 (1975). Here the clubs presented expert scientific evidence which tended to show that the permit would have a serious and deleterious effect upon both Sand Spring Run and neighboring Lake Maskenozha. The Board viewed this evidence as credible and so, in essence, shifted the burden of going forward with the evidence to the DER and the petitioners.

Support for the Board's action can be found in 25 Pa. Code §95.1(b) which provides:

> (b) Waters having a water use designated as "High Quality Waters" in §§93.6 and 93.9 (relating to general water quality criteria and

designated water uses and water quality criteria) *shall be maintained and protected at their existing quality or enhanced, unless the following are affirmatively demonstrated by a proposed discharger of sewage,* industrial wastes, or other pollutants:

(1) The proposed new, additional, or increased discharge or discharges of pollutants is justified as a result of necessary economic or social development which is of significant public value.

(2) Such proposed discharge or discharges, alone or in combination with any other anticipated discharges of pollutants to such waters, will not preclude any use presently possible in such waters and downstream from such waters, and will not result in a violation of any of the numerical water quality criteria specified in §93.9 (relating to designated water uses and water quality criteria) which are applicable to the receiving waters. (Emphasis added.)

There is no dispute as to the quality of the waters involved here. The stream and the lake are both considered of "high quality". 25 Pa. Code §93.9. And although a litigant is not normally required to prove a negative, we believe that the special concerns involved in this area of the law[2] together with 25 Pa. Code §95.1(b) demand that the petitioners and the DER be the parties responsible for justifying the permit after the clubs have presented evidence showing the likelihood of environmental harm. Moreover,

---

[2] The natural resources of the Commonwealth are considered to be a public trust created for the benefit of all people, with the DER, acting for the Commonwealth here, as the trustee. *See Payne.*

the Board cited in its adjudication the case of *Commonwealth v. Beitman,* 67 Pa. D. & .C.2d 499 (1974), wherein it had ruled that, inasmuch as Beitman had sufficiently alerted the Board to certain problems relating to the permit, "either [the permitee] or the department has the duty to come forth with clear and concise evidence as to whether this decision was prudent." *Id.* at 506. *Beitman* was cited with approval by this Court in *Concerned Citizens for Orderly Progress v. Department of Environmental Resources,* 36 Pa. Commonwealth Ct. 192, 387 A.2d 989 (1978) wherein we reiterated that it was the duty of the permittee and the DER to convince the Board of the prudence of the permit.

The petitioners also argue that certain findings of the Board are not supported by substantial evidence. We have carefully reviewed the very detailed findings of the Board and the voluminous record made in this case. And, although there are conflicts in the testimony, the duty to resolve these conflicts is for the Board, as the administrative fact-finder, not for this Court. *Pawk v. Department of Environmental Resources,* 39 Pa. Commonwealth Ct. 457, 395 A.2d 692 (1978). Substantial evidence[3] clearly exists in the record to support the decision made.

We must, therefore, affirm the order of the Board.[4]

---

[3] Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Department of Environmental Resources v. Borough of Carlisle,* 16 Pa. Commonwealth Ct. 341, 330 A.2d 293 (1974).

[4] We are mindful of the oft-stated principle that this Court may not substitute judicial discretion for administrative discretion, in matters such as these, which involve technical expertise and which are within the special knowledge and competence of the members of the Board. *Swartwood v. Department of Environmental Resources,* 56 Pa. Commonwealth Ct. 298, 424 A.2d 993 (1981).

### ORDER

AND Now, this 1st day of August, 1983, the order of the Environmental Hearing Board in the above-captioned matter is hereby affirmed.