97 Pa. Commonwealth Ct. 78 (1986)
509 A.2d 877
Commonwealth of Pennsylvania, Pennsylvania Game Commission, Petitioner
v.
Commonwealth of Pennsylvania, Department of Environmental Resources, Ganzer Sand & Gravel, Inc. and Hammermill Paper Company, Respondents.
No. 407 C.D. 1985.
Commonwealth Court of Pennsylvania.
Argued February 5, 1986.
May 7, 1986.
*79 Argued February 5, 1986, before President Judge CRUMLISH, JR., Judges ROGERS, CRAIG, DOYLE, BARRY, COLINS and PALLADINO.
*80 Stuart M. Bliwas, Chief Counsel, for petitioner.
William J. Kelly, with him, Robert C. LeSuer, Elderkin, Martin, Kelly, Messina & Zamboldi, for respondent, Ganzer Sand and Gravel, Inc.
Daniel Brocki, Senior Attorney, for respondent, Hammermill Paper Company.
OPINION BY JUDGE COLINS, May 7, 1986:
This is a petition by the Pennsylvania Game Commission (Game Commission) seeking review of an order issued January 17, 1985, by the Environmental Hearing Board (Board) upholding a decision of the Department of Environmental Resources (DER) to grant a solid waste permit (permit) to Ganzer Sand & Gravel, Inc. (Ganzer).
The permit was first issued by DER on November 1, 1982, following over three (3) years of meetings and discussions between Ganzer, DER, and the Hammermill Paper Company (Hammermill), the producer of the waste to be deposited at the fill site. The permit was applied for and issued in accordance with the provisions of the Solid Waste Management Act (SWMA)[1] and its implementing regulations.[2]
*81 The Game Commission then filed a notice of appeal within the thirty (30) days subsequent to issuance of the permit. Before holding hearings, the Board issued two orders, one issuing on March 29, 1983, denying the Game Commission leave to amend its grounds for appeal to assert a violation of Section 504 of the SWMA,[3] and the second, issuing on February 3, 1984, finding that the Game Commission lacked standing to assert the provisions of the Dam Safety and Encroachment Act (DSEA).[4] Nine (9) days of hearings were held before the Board,[5] at which extensive evidence was received regarding the effect of the issuance of the permit on the surrounding environment. The Board, on January 17, 1985, issued its adjudication, opinion, and order dismissing the Game Commission appeal. The Game Commission now petitions for review and presents seven issues on appeal.
The gist of the Game Commission's objection to the issuance of the permit is its allegation that the location of the waste fill site is threateningly close to State Game Lands No. 218-Siegel Marsh, a refuge maintained for game wildlife and plantlife. Thus, we are presented with a situation of two state agencies, one charged with the protection of the environment, the other charged with the regulation of game wildlife, carrying their differences to this Court in an attempt to settle their interagency policy disputes over how best to balance competing claims of industry and environment.
We begin by noting that our scope of review of Board decisions is limited by 2 Pa. C. S. §704 to determining *82 whether the Board committed constitutional violations, errors of law, or whether any necessary findings of fact made by the Board were unsupported by substantial evidence. Willowbrook v. Department of Environmental Resources, 92 Pa. Commonwealth Ct. 163, 165, 499 A.2d 2, 3 (1985). When we review an administrative order, the prevailing party is entitled to the benefit of every inference which can be logically drawn from the evidence when viewed in a light most favorable to the prevailing party. Doerr v. Pennsylvania Liquor Control Board, 88 Pa. Commonwealth Ct. 610, 614, 491 A.2d 299, 302 (1985). Questions of resolving conflicts in the evidence, witness credibility, and evidentiary weight are properly within the exclusive discretion of the factfinding agency, and are not usually matters for a reviewing court. Chapman v. Pennsylvania Board of Probation and Parole. 86 Pa. Commonwealth Ct. 49, 484 A.2d 413 (1984). An administrative agency has wide discretion when establishing rules, regulations, and standards, and also in the performance of its administrative duties and functions, and this Court cannot overturn an agency's exercise of its discretion absent proof of fraud, bad faith, or blatant abuse of discretion. Wengrzyn v. Cohen, 92 Pa. Commonwealth Ct. 154, 158, 498 A.2d 61, 62 (1985).

I. STANDING UNDER DSEA
The Game Commission contends first that the Board erred in denying it standing to raise violations of the DSEA[6] and its applicable regulations.[7] The main argument by the Game Commission is that it has standing to assert violations of the DSEA by virtue of its jurisdictional power to protect wildlife and the Commonwealth. See Sections 101, 210 and 214 of the Game Law Act.[8]
*83 Section 24(a) of the DSEA[9] gives a right of appeal to "[a]ny person who shall be aggrieved by any action of the department under this act. . . ." The cases interpreting the requirements of standing under the "any person aggrieved" language requires that the party, to be aggrieved, must have a direct, immediate, and substantial interest in the matter to be adjudicated, and there must be a direct causal connection between the act complained of and the harm alleged. William Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269 (1975); Snelling v. Department of Transportation, 27 Pa. Commonwealth Ct. 276, 366 A.2d 1298 (1976); Bahian v. Department of Public Welfare, 89 Pa. Commonwealth Ct. 644, 493 A.2d 803 (1985). See also Warth v. Seldin, 422 U.S. 490 (1975); K. Davis, Administrative Law, Vol. 4, §§24.16, 24.17 (2d Ed., 1983); Sands & Libonati, Local Government Law, §15.44 (1982 & Supp. 1985) (discussing standing of third parties to challenge illegality of issued permit or license).
Looking to the DSEA itself, it is difficult to conclude that it has the preservation of wildlife as one of its central concerns. Sections 2(1), 2(3), and 2(4) of the Act specify that people and property, natural resources, and water obstructions are among the concerns of the Act.[10] Of course, wildlife are dependent for their continuing viability upon the natural resources of their ecosystem and habitat, but it is an illogical jump for us to proceed from this premise and conclude that as trustee of game wildlife in the Commonwealth, the Game Commission has standing under the DSEA to insure the maintenance of all natural resources required to sustain its faunal wards. Such a conclusion would give every Commonwealth *84 agency the right to intervene in another agency's proceedings, so long as the interest concerned was a "prerequisite" to the health or well-being of the interest entrusted to the rival agency.
This approach ignores the requirement of showing a direct, immediate, and substantial interest in the matter to be adjudicated. Such a requirement must be met by specific pleadings in at least some circumstances. Here, the Game Commission would have been required to show that violations of the DSEA bore a direct, immediate, and substantial relation to its status as a trustee of the Commonwealth's wildlife. Our review of the record indicates that the Game Commission failed to plead sufficient facts or law in support of its conclusion that it had standing.
Assuming arguendo that the Game Commission did have standing under the DSEA, we note that the requirements of the DSEA are waivable by the DER and the Environmental Quality Board (EQB) in many cases. Section 7(a) of the Act provides that the EQB may waive the permit requirements entirely, while Section 7(b) of the Act permits the DER in accord with EQB rules to issue "general permits" on a statewide or regional basis for similar types of projects."[11] Moreover, the DER has the ultimate power to issue permits under the DSEA in any event.[12] The waiver provisions are implemented at 25 Pa. Code §105.12.
We further note that the DER has delegated to itself the task of preserving wetlands and determining threats to wildlife. See 25 Pa. Code §105.17. An agency's interpretation of its own rules is entitled to great weight, and our scope of review is limited to finding errors of law, constitutional violations, and determining if *85 findings of fact were unsupported by substantial evidence. Westmoreland Manor v. Department of Public Welfare, 91 Pa. Commonwealth Ct. 155, 168, 496 A.2d 1282, 1288 (1985).
Finally, we note that there is a substantive issue on the merits as to whether the DSEA would itself even apply to the fill in question unless it fell within the purview of the jurisdictional specifications of Section 4 of the DSEA, particularly Section 4(c) of the DSEA, which states that the Act shall apply to "[a]ll water obstructions and encroachments other than dams, located in, along, across or projecting into any watercourse, floodway, or body of water, whether temporary or permanent."[13] The Game Commission, even if it had standing to invoke the DSEA, would still have to demonstrate that the project in question constituted either a "water obstruction" or "encroachment" "along" those wetlands. Our review of the record persuades us that the fill site is sufficiently distant from the wetlands so as not to be "along" them for purposes of invoking the jurisdictional provision of the DSEA.
Having thus resolved the question of standing, it remains to state that the Game Commission's reliance on the case of Susquehanna County Board of Commissioners v. Department of Environmental Resources, 500 Pa. 512, 458 A.2d 929 (1983), is misplaced. Susquehanna County stands for the narrow question of whether a county or local governmental unit has standing under the SWMA[14] to contest the placing of toxic wastes within its own borders in proceedings before the DER. Our Supreme Court, relying on its prior decision in Franklin Township v. Department of Environmental Resources, 500 Pa. 1, 452 A.2d 718 (1982), held that *86 when the site of a toxic waste dump is within the confines of a county or local government unit, then that county or unit has a direct, immediate, and substantial interest sufficient to confer standing on it under the SWMA. Obviously, the Game Commission is not a local unit or county attempting to invoke standing under the SWMA, but a rival state agency attempting to invoke standing under a different statute, the DSEA. Moreover, unlike the situation in Susquehanna County, where the proposed landfill would be situated within the borders of the aggrieved party, here the site of the fill only abuts the perimeters of the State Game Lands overseen by the Game Commission. Thus, the interest of the Game Commission is not as great as the interests of the parties accorded standing in Susquehanna County and Franklin Township.

II. STANDING UNDER ARTICLE I, SECTION 27 OF THE PENNSYLVANIA CONSTITUTION
The Game Commission next argues that it is entitled to review of the DER's action and the Board's adjudication pursuant to Article I, Section 27 of the Pennsylvania Constitution (Section 27), the environmental rights amendment, which states that:
The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.
Id. (adopted May 18, 1971).
This Court in 1973 adopted a three-part test of judicial review under Section 27 in which an appellate court must ask:

*87 (1) Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources?
(2) Does the record demonstrate a reasonable effort to reduce the environmental incursion to a minimum?
(3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion?
Payne v. Kassab, 11 Pa. Commonwealth Ct. 14, 29-30, 312 A.2d 86, 94 (1973), aff'd, 468 Pa. 226, 361 A.2d 263 (1976). See Mignatti v. Environmental Hearing Board, 49 Pa. Commonwealth Ct. 497, 503, 411 A.2d 860, 863 (1980); Einsig v. Pennsylvania Mines Corp., 69 Pa. Commonwealth Ct. 351, 371, 452 A.2d 558, 568, n. 13 (1982). See also Woodside, Pennsylvania Constitutional Law, 175-92 (1985).
Standing is required before a party may invoke Section 27 in an administrative appeal. See Community College of Delaware County v. Fox, 20 Pa. Commonwealth Ct. 335, 344, 342 A.2d 468, 474 (1975). Under Fox, a party seeking Section 27 review must be a "party aggrieved." Under the William Penn Parking Garage standard, this would require a petitioner to have a direct, immediate, and substantial interest in the matter to be reviewed.
The actual issues raised by the Game Commission for Section 27 review are no different than those raised directly under the DSEA. The Game Commission alleges violations of Section 502(d), 503(d), and 601(c) of the SWMA,[15] but these provisions merely make DSEA *88 compliance a prerequisite to SWMA permit issuance in those cases where the DSEA is applicable. For the reasons stated previously, we question whether the DSEA would apply to the fill in question.[16] More pertinently, may a state agency lacking standing under a specific statute gain standing to invoke that statute and raise the identical issue by seeking Section 27 review? No substantive issue as to prongs two and three of the Payne v. Kassab test has been raised by petitioner, and in the record we find substantial evidence that the environmental and social concerns mandated by Section 27 were adequately balanced in the hearing conducted before the Board.
The crucial issue here is the Game Commission's status as a state agency. Although it claims to have standing as a trustee of the Commonwealth's wildlife to seek Section 27 review, it is equally clear that the DER has promulgated a valid regulation which accords itself the task of preserving wetlands and determining threats to wildlife engendered by the issuance of a permit. See 25 Pa. Code §105.17. The invocation of Section 27 before an administrative agency will not empower or require the agency to exceed the bounds of its legislative duties and powers. See Borough of Moosic v. Public Utility Commission, 59 Pa. Commonwealth Ct. 338, 429 A.2d 1237 (1981). Likewise, an agency should not have standing to intrude on the jurisdiction of a rival agency merely by virtue of Section 27 unless that agency is representing directly the interests of individuals or groups, as in the case of the Consumer Advocate or a similar such department empowered specifically to intervene on the public behalf.
Consequently, we hold that the Game Commission lacks standing to invoke Section 27 review because *89 under the legislative delegation of duties, we find that the DER and not the Game Commission has the duty to protect wildlife pursuant to the DSEA and further that the DER and the Board have fulfilled their constitutional mandate under Section 27 to properly balance the competing interests of industry and ecology. Even if the Game Commission could properly assert the interests of wildlife, pursuant to the DSEA, such an interest would not be direct, immediate, and substantial. We note finally that the Game Commission had a full and fair opportunity to litigate claims of environmental damage before the Board and to hold they lack standing to invoke the DSEA pursuant to Section 27 is not to say they have been denied a forum to protest the safety of the fill site. As we stated, we feel that the Board's extensive and able review adequately met the balancing test of Payne v. Kassab, and nothing before us compels us to disturb the Board's conclusions.
Finally, we emphasize that this holding is restrictive in its application, as the instant controversy involves the standing of a state agency to invade the regulatory jurisdiction of a rival agency by claiming a right to Section 27 review. The standing requirements of Section 27 are normally to be broadly construed, especially where a potentially affected locality or private citizen, or specifically empowered watchdog agency, seeks review of an environmentally sensitive DER decision. See Franklin Township v. Department of Environmental Resources, 500 Pa. 1, 452 A.2d 718 (1982); Bedminster Township v. Department of Environmental Resources, 87 Pa. Commonwealth Ct. 148, 486 A.2d 570 (1985).

III. BURDEN OF PROOF
The Game Commission next argues that the DER failed to carry its burden of proof to show that a 2 to 1 ratio of waste to base was as safe as a 1 to 1 ratio of *90 waste to base.[17] The Board found in this regard that whereas the Meadville Regional Office of the DER has proposed a 1 to 1 ratio of waste to base, Secretary Duncan of the DER at a meeting held February 2, 1982, determined that the permit would be issued requiring a 2 to 1 ratio of waste to base.
The Board in its adjudication found that the applicable regulations implementing the SWMA do not require a 1 to 1 ratio of waste to base. See 25 Pa. Code §§75.38(b)(2); 75.33(h)(iii); 75.38(c)(5). It held that since the waste here in question is an industrial waste found by DER not to pose an adverse effect to the environment, the provisions of 25 Pa. Code §§75.38(b)(2) and 75.33(h)(iii) were governing, and not 25 Pa. Code §75.38(c)(5) as urged by the Game Commission. After reviewing the relevant provisions of the Code, we must agree with the conclusion of the Board.
Next, we must determine who had the burden of proof at the hearing and who prevailed or failed to prevail. The burden of proceeding and the burden of proof are placed upon the party asserting the affirmative of any issue in a Board hearing. See 25 Pa. Code §21.101. The party protesting the issuance of a permit by the DER has the burden of proof to come forward with some evidence to show, on the record produced before the Board, that the issuance of the permit was arbitrary or amounted to an abuse of discretion. See Marcon, Inc. v. Department of Environmental Resources, 76 Pa. Commonwealth Ct. 56, 462 A.2d 969 (1983). Then the burden of production may shift to DER to justify the issuance of the permit, but only after the protesting party has presented evidence showing the likelihood of environmental harm. Id. at 59-61, 462 A.2d at 971. However, the ultimate burden of proof remains at all times with the protesting party.
*91 Here, the Board held that the February 2, 1982, decision to allow a 2 to 1 waste to base ratio in lieu of the 1 to 1 waste to base ratio recommended by the Meadville office was an abuse of discretion. However, the Game Commission still possessed the burden of coming forward with credible evidence showing the likelihood of environmental harm as a consequence of the abuse of discretion before the burden of production could be shifted on to the DER. Based on the record, we conclude that they failed this burden. Nonetheless, the DER came forward with expert testimony and other credible evidence supporting the conclusion that a 2 to 1 waste to base ratio posed no threat to the environment. The Board, substituting its discretion for that of the DER, then determined that the 2 to 1 waste to base ratio had been justified based on the evidence before it.
We hold the Board did not abuse its discretion in upholding the 2 to 1 waste to base ratio, as there is substantial evidence in the record supporting the conclusion that no environmental harm will result. The ultimate burden of proof lay upon the Game Commission, regardless of whether they presented enough evidence to shift the burden of production and of justification onto the DER. Once DER justified the permit, the Game Commission had to come forth with evidence meeting its ultimate burden of proof as the protesting party. The question of whether they did so was a credibility question solely within the province of the Board as factfinder, which we cannot disturb in the presence of substantial evidence supporting the Board's conclusions. Chapman v. Pennsylvania Board of Probation and Parole, 86 Pa. Commonwealth Ct. 49, 484 A.2d 413 (1984).

IV. RIGHT TO FILE A BRIEF IN SUPPORT OF PETITION FOR LEAVE TO AMEND
The final issue of plausible merit raised by the Game Commission involves an alleged adjudication by the *92 Board without permitting the Game Commission to file a brief as required by 2 Pa. C. S. §506 and as required by cases of our Court construing constitutional due process requirements before administrative agencies, see Sacks v. Unemployment Compensation Board of Review, 59 Pa. Commonwealth Ct. 208, 429 A.2d 136 (1981); Moyer v. Unemployment Compensation Board of Review, 36 Pa. Commonwealth Ct. 553, 388 A.2d 772 (1978); Bengal v. State Board of Pharmacy, 2 Pa. Commonwealth Ct. 347, 279 A.2d 374 (1971). The relevant facts must be reviewed.
On November 1, 1982, DER issued the permit. On November 22, 1982, the Game Commission timely appealed the permit issuance, alleging violations of the SWMA regulations[18] and of the DSEA. On March 1, 1983, the Game Commission petitioned for leave to amend its grounds for appeal to include an alleged violation of Section 504 of the SWMA,[19] which requires review of a permit application by the appropriate county and host municipality. On March 10, 1983, the Board ordered the DER to file objections on or before March 18, 1983, and ordered the Game Commission to file responses to those objections along with any memoranda accompanying the responses on or before April 1, 1983. The order stated that the Board would rule on the petition to amend shortly after April 1, 1983. Ganzer, Hammermill, and DER then filed separate objections, answers, and motions to quash, fully briefed, which the Board accepted and presumably read, quod fieri debet facile praesumitur. The Board then proceeded to rule on the petition, dismissing it for want of standing and lack of timeliness, on March 29, 1983, prior to the Game Commission having filed any responses to the respondents' objections, answers, and motions to quash.
*93 The first issue is whether this order constituted an adjudication for purposes of 2 Pa. C. S. §506 and the cases construing due process to require the allowance of the filing of a brief before an administrative agency may render an adjudication. We believe this is a question of first impression, as to whether a decision to allow a party to amend a petition for appeal after the initial thirty-day period has expired is an adjudication invoking the 2 Pa. C. S. §506 and due process requirements of allowing both sides to file briefs. We hold that a decision to allow a party to amend an appeal to include new grounds, after the thirty-day period has run, is analogous to a decision to allow an agency appeal nunc pro tunc.
That the Game Commission captioned its petition a "Petition to Amend" does not alter its substantive character as an appeal nunc pro tunc to the Board, albeit of the same permit issuance but on new legal grounds. The provision set forth in 25 Pa. Code §21.51(e) states quite specifically that:
(e) The appeal shall set forth in separate numbered paragraphs the specific objections to the action of the Department. Such objections may be factual or legal. Any objection not raised by the appeal shall be deemed waived, provided that upon good cause shown, the Board may agree to hear such objection or objections.

Id. (emphasis added). This Court has specifically upheld the waiver provisions of this regulation. See Ohio Farmers Insurance Company v. Department of Environmental Resources, 73 Pa. Commonwealth Ct. 18, 21, 457 A.2d 1004, 1005, n. 6 (1983). Next, we turn to 25 Pa. Code §21.52, which states that jurisdiction of the Board shall not attach to any appeal not filed within the thirty-day period except as provided in 25 Pa. Code §21.53, which relates to appeals nunc pro tunc.
*94 In either case, whether we term the petition a new set of specified grounds filed after the thirty days or an appeal nunc pro tunc, it is clear that the Board need not grant the petition absent a showing of good cause. Thus, this is not a case like a civil suit, where leave to amend should be liberally granted absent an error of law or prejudice to the opposing party, Bata v. Central-Penn National Bank of Philadelphia, 423 Pa. 373, 224 A.2d 174 (1966), cert. denied, 386 U.S. 1007 (1967). Instead, the failure to file specific grounds for appeal within the thirty-day period is a defect going to jurisdiction, and the time period cannot be extended nunc pro tunc in the absence of a showing of fraud or breakdown in the court's operation. Department of Transportation, Bureau of Traffic Safety v. Royster, 31 Pa. Commonwealth Ct. 647, 377 A.2d 1038 (1977).
Consequently, the Board would normally not be required to seek briefs from all parties prior to a decision not to allow the addition of new grounds of appeal subsequent to the thirty-day period. It is not adjudicating for due process purposes to dismiss an appeal nunc pro tunc absent a showing of good cause. The record in this case reflects an utter absence of good cause shown, except for allegation that the new grounds of appeal were learned of through discovery. This does not normally constitute good cause in Board practice unless the party has already pleaded the requirement of discovery to elucidate the grounds of appeal in the original appeal filed timely within the thirty-day period. See 25 Pa. Code §21.51(e).
Had the Board merely dismissed the petition, no issue of due process or violation of 2 Pa. C. S. §506 would have been viable. The Board was under no obligation to afford a full briefing to the parties before ruling on what was in essence an appeal nunc pro tunc. However, the Board acted in an apparently unfair manner *95 by first inviting the respondents to file objections to the petition, and then in rendering its decision before the Game Commission was allowed to file responses which the Board had specifically invited the Game Commission to file in its order of March 10, 1983. Moreover, the Board rendered its decision on March 29, 1983, after specifically stating in its order of March 10th that no decision would be forthcoming until after April 1st and until after the Game Commission had filed its responses.
The issue is whether this apparent unfairness requires reversal of the Board's decision. We hold that it does not, although in doing so, we do not express approval or sanction of the Board's actions. We do so because the petition to amend is meritless, and because the Board permitted the Game Commission to address the environmental issue raised by the Section 504 grounds despite having dismissed the formal petition to amend.
First, we note that the due process requirement of allowing each side to file briefs prior to an administrative adjudication has not been without its exceptions. For example, the right may be waived for failing to request to be informed of the time of filing of a transcript, In re Real Estate License, 47 Pa. Commonwealth Ct. 236, 407 A.2d 922 (1979), or waived for failure to request the right to file a brief, Feddish v. State Board of Chiropractic Examiners, 13 Pa. Commonwealth Ct. 43, 317 A.2d 899 (1974). In the case of Luckhardt v. State Employees Retirement Board, 74 Pa. Commonwealth Ct. 393, 459 A.2d 1347 (1983), we held that failure to furnish counsel with a copy of the final examiner's report was harmless error where counsel had been informed at the hearing of his right to file a brief within three (3) weeks but had failed to do so.
*96 In this case, we feel that failure to wait to see the responses of the Game Commission was harmless error, because its advocated position was meritless with respect to the granting of the petition. Consequently, the error was harmless and the Game Commission was not prejudiced.
The petition was meritless due to the Board's correctness in ruling that the Game Commission lacked standing to raise the issue of a violation of Section 504 of the SWMA[20] and in ruling that the petition was not timely. To remand for a determination of a point of law such as this one would be an inexpedient waste of judicial and administrative resources. It is clear that the Game Commission may not raise the issue of a county's or municipality's objections to the issuance of an SWMA permit under Section 504. Jus tertiae rights are not normally encompassed by the standing requirements of William Penn Parking Garage. Moreover, there was no showing of good cause, so that the petition clearly was untimely. Consequently, no brief, however persuasive, could have altered the Board's correct determination that as a matter of law the Game Commission could not raise this issue of compliance with Section 504.
A brief review of the record demonstrates that the Game Commission was attempting to assert third party rights. The only violation of Section 504 which occurred was related to Erie County. On April 15, 1982, Erie County raised an objection to the issuance of the permit based on fears of leachate breakout from the fill site. On September 1, 1982, Erie County withdrew this objection in exchange for the agreed inclusion of a condition in the permit that the permit applicant provide proper control and disposal of any leachate. This condition was never actually included in the permit, and the DER did *97 not publish an "override" justification as required by Section 504.[21] Obviously, the right to appeal this dereliction belonged to Erie County, as it was to them that the illegality pertained. The Game Commission clearly lacked standing to raise this point on behalf of the county, which did not appeal or challenge the permit issuance.
Moreover, the Board in its order of March 29, 1983, permitted the Game Commission to present evidence regarding the issue of whether the leachate control provision should be included in the permit. As such, the substantive environmental issue sought to be raised by the petition to amend was allowed to be raised in the hearings before the Board, although the petition itself was formally denied. The Game Commission has, therefore, been afforded a substantive hearing on the issue, and no remand is required.[22]

V. ABUSE OF DISCRETION
With respect to the remaining three arguments, the Game Commission contends that the Board abused its discretion in allowing testimony to be reopened one day and in failing to admit certain exhibits and testimony relating to toxicity tests and the potential effects of selenium on the marsh wetlands.
It is clear that matters of evidence taking, and the admission of testimony and exhibits, are matters committed to the sound discretion of the hearing body. The matter to be adjudicated was of a technical nature, and this Court may not substitute judicial discretion for administrative discretion in matters involving technical expertise and which are within the special knowledge *98 and competence of the Board. Swartwood v. Department of Environmental Resources, 56 Pa. Commonwealth Ct. 298, 424 A.2d 993 (1981). We find that the Board's decisions to hold another day of hearings and to not admit certain evidence and testimony were technical matters within the special knowledge and competence of the Board, and absent a blatant abuse of discretion, we cannot disturb the Board's decisions.

VI. CONCLUSION
For all the above reasons, the January 17, 1985, order of the Board is affirmed.

ORDER
AND NOW, this 7th day of May, 1986, the order of the Environmental Hearing Board, No. 82-284-G, filed January 17, 1985, is hereby affirmed.
NOTES
[1] Act of July 7, 1980, P.L. 380, as amended, 35 P.S. §§6018.101-6018.1003.
[2] See 25 Pa. Code §§75.1-75.336.
[3] 35 P.S. §6018.504. The provisions of this statute are discussed infra.
[4] Act of November 26, 1978, P.L. 1375, as amended, 32 P.S. §§693.1-693.27.
[5] February 27-29, 1984; April 5-6, 1984; June 11-13, 1984; August 9, 1984.
[6] See note 4.
[7] See 25 Pa. Code §§105.1-105.441.
[8] Act of June 3, 1937, P.L. 1225, as amended, 34 P.S. §§1311.101, 1311.210, 1311.214.
[9] 32 P.S. §693.24(a).
[10] 32 P.S. §§693.2(1), 693.2(3), 693.2(4).
[11] See 32 P.S. §§693.7(a), 693.7(b).
[12] See Section 9 of the Act, 32 P.S. §693.9.
[13] See 32 P.S. §693.4(c). See also 25 Pa. Code §105.3(4).
[14] See note 1.
[15] See 35 P.S. §§6018.502(d), 6018.503(d), 6018.601(c).
[16] See note 13 and accompanying text.
[17] "Base" refers to soil base.
[18] See note 2.
[19] See 35 P.S. §6018.504.
[20] See note 19.
[21] See note 19.
[22] The DER presented testimony that no leachate breakout would occur, so that there is substantial evidence supporting a determination that the permit need not contain the provision originally suggested by Erie County.