599 A.2d 248

**Bobbi L. FULLER et al., Petitioners,**

**v.**

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 1991.

Decided Nov. 8, 1991.

John E. Childe, Jr., for petitioners.

Justina M. Wasick, Asst. Counsel, for respondent.

Frank P. Mincarelli, for intervenor/respondent, Paradise Tp. Sewer Authority.

Before CRAIG, Presiding Judge, PELLEGRINI, J., and NARICK, Senior Judge.

CRAIG, President Judge.

Bobbi L. Fuller, Darryl Wilson and the Paradise Township Citizen's Association (PTCA) appeal from a decision of the Environmental Hearing Board (EHB) dismissing PTCA's appeals from the Pennsylvania Department of Environmental Resources' issuance of a water quality management permit, a sewer permit and a national pollutant discharge elimination system (NPDES) permit. We affirm.

The issue in this case is whether a citizen's group that has appealed from the department's issuance of a construction permit authorizing construction of a sewage treatment plant, and from the department's transfer of a permit authorizing discharge into a creek, may raise issues regarding *the location of the plant*, including the plant's impact on flooding, the plant's impact on wetlands, the plant's impact on nearby historic structures and the plant's impact upon the environment as a whole, when the group has not appealed the official approval of that location.

The facts in this case, taken from EHB's adjudication, are as follows. Bobbi Fuller, Darryl Wilson and members of the PTCA are residents (or nearby residents) of Paradise Township, Lancaster County who object to the construction of a sewage treatment plant in their township. A brief history of the sewage treatment plant follows.

In 1987, the department approved Paradise Township's official sewage treatment plant plan, which called for *a sewage treatment plant to be located near Pequea Creek in Paradise Township.* PTCA did not appeal the department's approval of the official plan.

On June 30, 1987, the department issued a sewer permit to Paradise Township, which authorized the construction of sewers and appurtenances pursuant to the official sewage plan. The PTCA did not appeal from the issuance of this sewer permit.

On July 4, 1987, the department issued to Paradise Township a national pollutant discharge elimination system (NPDES) permit which authorized Paradise Township to discharge .12 million gallons per day of effluent from the plant into Pequea Creek. PTCA did not appeal the issuance of the NPDES permit.

On April 28, 1989, the department approved the *transfer* of the sewer permit from Paradise Township to the Paradise Township Sewer Authority; no other terms or conditions of the sewer permit were altered. PTCA appealed from the transfer of this permit.

Also on April 28, 1989, the department issued an encroachments permit to the Paradise Township supervisors which approved *the location of the sewage treatment plant* in the 100–year floodway of Pequea Creek. PTCA did not appeal the issuance of the encroachments permit.

On April 29, 1989, the department issued an amendment to the NPDES permit authorizing the transfer of the permit from Paradise Township to the Paradise Township Sewer Authority (authority); the department made no other changes to the terms and conditions of the permit. PTCA appealed from this permit to EHB.

Also on April 29, 1989, the department issued a water quality management permit (hereafter referred to as the construction permit) which authorized the construction and operation of the sewage treatment plant. PTCA appealed the issuance of the construction permit.

Thus, PTCA appealed to the EHB the transfer of the NPDES permit, the transfer of the sewer permit and the construction permit. On May 2, 1990, the EHB set a hearing date for June 11–13. PTCA's original appeal listed several contentions, arguing that the department did not:

1. comply with the department's sewerage manual;
2. consider possible airborne pathogens;
3. consider safety problems associated with the closing of a nearby road;
4. consider the flooding impact of the plant;
5. consider alternative locations; or
6. act in accordance with applicable rules, regulations, statutes and guidelines.

On June 5, 1990, PTCA submitted to the EHB an amended memorandum of law, which argued that the department did not consider:

1. the plant's impact on wetlands;
2. the plant's impact on historic areas in the township;
3. the balance between economic development and environmental concerns; or
4. floodplain management rules and regulations.

In addition to amending PTCA's original legal arguments, PTCA also sought to add two new witnesses to PTCA's original witness list, filed with PTCA's original appeal. The two employees were Jack Ford, an employee of the Bureau of Dams and Waterways Management and Tim Finnegan, an employee of the Bureau of Water Quality Management. PTCA wanted Jack Ford to testify about the sewage facility's impact on flooding because Ford worked on the dam encroachment permit. The PTCA wanted Tim Finnegan to testify about the sewage treatment plant plan approved in 1987, on which Finnegan worked. PTCA sought the testimony of these two employees even though the PTCA had not appealed from the encroachment permit or official plan.

On June 11, 1990, at the hearing before the EHB, the department offered two motions: the first to quash the subpoenas of Ford and Finnegan, and the second to strike PTCA's amended appeal. The EHB granted both motions. Concerning the motion to quash the subpoenas of Ford and Finnegan, the EHB stated:

[A] motion to quash was granted with respect to Messrs. Ford and Finnegan because their testimony would be, at the time, prejudicial and unfair and because the subject of their testimony was precluded by appellant's [PTCA] failure to challenge the approval of the official plan or the issuance of the encroachments permit.

Concerning the department's motion to strike PTCA's amended appeal, the EHB stated that it granted the motion because the issues raised by it were outside the scope of the appeal.

PTCA now appeals to this court[1] seeking to overturn EHB's dismissal of its appeals from the three permits. Specifically, PTCA argues the EHB erred in granting the department's motions to quash and strike PTCA's amended

1. Our scope of review of an EHB decision is limited to a determination of whether an error of law has been committed, constitutional rights have been violated, or any findings of fact are unsupported by substantial evidence. *Einsig v. Pennsylvania Mines Corp.*, 69 Pa.Commonwealth Ct. 351, 452 A.2d 558 (1982).

memorandum of law, thus not permitting PTCA to raise those issues contained in its amended memorandum of law.

## 1. Subpoenas

■ Critical to our analysis of this case is determining what is encompassed by the permits that PTCA appealed. At the hearing, Edward Ruch, an employee of the Bureau of Water Quality Management, explained what the permits PTCA appealed from authorized:

A  The NPDES permit is for the discharge. It places discharge limitations, but it doesn't allow construction of the treatment facility. The Part II or construction permit is the permit required in order to build the treatment plant.

Thus, none of the permits appealed by PTCA actually approved the location of the plant site.

PTCA nevertheless argues that it may pursue the issue of the environmental impacts associated with the location of the plant at any stage of the permitting process because the Constitution of Pennsylvania and statutory authority give PTCA the right to do so.

PTCA cites *Concerned Citizens for Orderly Progress v. Department of Environmental Resources*, 36 Pa.Commonwealth Ct. 192, 387 A.2d 989 (1978), for the proposition that, before issuing any permit under the Clean Streams Law,[2] the department is statutorily required to consider the factors specified in sections 5(a)(1), (2), (3) and (5) of the Clean Streams Law, 35 P.S. §§ 691.5(a)(1), (2), (3), (5), and that those criteria necessitate a review of the location of the sewage treatment plant. Specifically, those sections state:

§ 5.  **Powers and duties**

(a) The department, in adopting rules and regulations, in establishing policy and priorities, in issuing orders or permits, and in taking any other action pursuant to this act, shall, in the exercise of sound judgment and discretion, and for the purpose of implementing the declaration

2. Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. §§ 691.1–691.1001.

of policy set forth in section 4 of this act, consider, where applicable, the following:

(1) Water quality management and pollution control in the watershed as a whole;

(2) The present and possible future uses of particular waters;

(3) The feasibility of combined or joint treatment facilities;

. . . .

(5) The immediate and long-range economic impact upon the Commonwealth and its citizens.

In *Concerned Citizens*, a group of landowners near a proposed sewage treatment plant appealed from the department's issuance of a construction permit. The group challenged the permit on the grounds that it violated the Clean Streams Law, that the department failed to consider the flooding impacts of the plant, and that the plant violated art. 1, § 27 of the Pennsylvania Constitution.[3] This court affirmed the department's permit, stating that the group failed to meet its burden of proving any of its allegations.

However, in *Concerned Citizens* no one raised the issue of whether an appeal from a construction permit authorizes the trial of questions regarding the location of a sewage treatment plant. Therefore, *Concerned Citizens* is not determinative in this case.

PTCA also argues that the case of *Payne v. Kassab*, 11 Pa.Commonwealth Ct. 14, 312 A.2d 86 (1973), gives it the right to raise location issues from an appeal of a discharge and construction permit. *Payne* held that art. 1, § 27 of the Pennsylvania Constitution requires a threefold test when analyzing environmental issues:

---

**3.** Art. 1, § 27 of the Pennsylvania Constitution states:

The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural reserves are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

(1) Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources?

(2) Does the record demonstrate a reasonable effort to reduce the environmental incursion to a minimum?

(3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion?

11 Pa.Commonwealth Ct. at 29–30, 312 A.2d at 94.

However, *Payne* does not address the issue of whether appeals from a discharge permit and construction permit authorize an attack on the location of the plant.

The department argues, and we agree, that art. 1, § 27 of the Pennsylvania Constitution and section 5 of the Clean Streams Law require the department to analyze environmental impacts related only to the scope of the permits PTCA appealed. PTCA admitted that it sought to call Ford and Finnegan to question them about the dam encroachment permit and official plan, neither of which PTCA appealed.

The department further argues that PTCA's appeal is meritless because the department must comply with section 5 of the Clean Streams Law and other environmental concerns when reviewing the plan of a sewage facility. The department points to its regulations at 25 Pa.Code § 71.21, governing approval of such plans, which state:

§ 71.21. **Content of official plans.**

(a) A municipality shall ... submit a Task/Activity Report or other appropriate form prior to preparation of an official plan to determine which of the planning elements listed in this section are necessary to meet the specific needs of the municipality. ... the completed plan submitted to the Department shall:

. . . .

(3) Delineate and describe through a text, map and analysis:

....

(iv) ... *use and protection of land and water resources.*

....

(5) Evaluate each alternative ... including, but not limited to:

(i) Consistency between the proposed alternative and the objectives and policies of:

(A) Applicable plans developed and approved under *sections 4 and 5 of the Clean Streams Law....*

....

(I) Wetland protection under Chapter 105.... (Emphasis added.)

Because PTCA's appeal is limited to the issues regarding the environmental impacts of the construction of the plant and the discharge generated from the plant, the testimony of Finnegan and Ford would not be within the scope of this appeal because neither worked on the construction or discharge permits. Therefore, EHB did not err in granting the department's motion to quash the subpoenas of Ford and Finnegan.

### 2. Motion to Strike PTCA's Memorandum of Law

PTCA also appeals the EHB's decision granting the department's motion to strike PTCA's amended memorandum of law. PTCA objects to EHB's denial of its amended memorandum of law by arguing that the additional issues raised in the amended memorandum are relevant to its appeal of the construction and discharge permits.

The department argues that the board did not err in striking Fuller's amended notice of appeal, because of this court's decision in *Pennsylvania Game Commission v. Pennsylvania Department of Environmental Resources,* 97 Pa.Commonwealth Ct. 78, 509 A.2d 877 (1986), *aff'd* 521 Pa. 121, 555 A.2d 812 (1989).

In *Pennsylvania Game Commission* this court held that an appeal from an action of the department must set forth

specific grounds for appeal and an amended appeal filed after the thirty day period has run is analogous to an appeal nunc pro tunc. Thus, this court held that the board need not grant a petition to amend without a showing of fraud or breakdown in the court.

In this case, PTCA has not alleged fraud or a breakdown in the department's operation. Furthermore, the issues PTCA raises in its amended memorandum of law are outside the scope of this appeal. Therefore the board did not err in granting the department's motion to strike PTCA's amended memorandum of law.

Accordingly, the decision of the Environmental Hearing Board is affirmed.

## ORDER

NOW, November 8, 1991, the order of the Environmental Hearing Board, No. 89–142–W, dated December 20, 1990, is affirmed.