Bedminster Township, Wayne J. Busfield et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, George Kuehnle, Permittee, and the City of Philadelphia, Respondents.

Wayne J. Busfield et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, George Kuehnle, Permittee, and the City of Philadelphia, Respondents.

Argued June 7, 1984, before Judges MacPhail, Colins and Palladino, sitting as a panel of three.

*Mary C. Eberle,* with her, *Victor S. Jaczun,* for petitioner, Bedminster Township.

*Stephen B. Harris,* for petitioner, Wayne J. Busfield, et al.

*Denis B. Byrne,* for respondent/permittee, George Kuehnle.

*Flora Barth Wolf,* with her, *Alan J. Davis,* City Solicitor, and *Louis F. Hinman, III,* Deputy City Solicitor, for respondent, City of Philadelphia.

OPINION BY JUDGE COLINS, January 18, 1985:

The Commonwealth of Pennsylvania, Department of Environmental Resources (DER) issued a solid waste disposal permit,[1] Permit No. 600015, to George

---

[1] The actual permit application was prepared under the supervision of Bi-Products Systems, Inc. (Bi-Products), a consultant to the City.

W. Kuehnle. The permit authorized the application of sewage sludge[2] from the City of Philadelphia to a portion of Kuehnle's farm in Bedminster Township, Bucks County. Bedminster Township and local residents of the Township (petitioners) timely appealed the issuance of the permit to the Environmental Hearing Board (EHB). The EHB dismissed the appeal on the basis that Bedminster Township lacked standing and that the private citizens failed to show DER abused its discretion in granting the permit. Petitioners now petition this Court for review of the EHB's order.

Our scope of review of an order of the EHB is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether the findings of facts are supported by substantial evidence. *Lucas v. Department of Environmental Resources,* 53 Pa. Commonwealth Ct. 598, 420 A.2d 1 (1980).

Petitioner Bedminster Township first argues that it has standing to appeal the grant of a permit which allows the application of sewage sludge to land located within its borders. The Township is correct in this assertion.

To have standing,

"[a party] must have a direct interest in the subject matter of the particular litigation, otherwise he can have no standing to appeal. And not only must the party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the

---

[2] Only sewage sludge from the southwest treatment plant of the City was to be used. This sludge had treatment of a higher grade.

judgment. The interest must also be substantial.''

*William Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 191, 346 A.2d 269, 280 (1975) (quoting *Man O'War Racing Association, Inc. v. State Horse Racing Commission,* 433 Pa. 432, 441, 250 A.2d 172, 176-77 (1969)).

The interest of Bedminster Township in protecting the environment, which is part of its physical existence, is "substantial" since "[t]oxic wastes which are deposited in the land irrevocably alter the fundamental nature of the land which in turn irrevocably alter the physical nature of the . . . [township] of which the land is a part.'' *Franklin Township v. Department of Environmental Resources,* 500 Pa. 1, 6, 452 A.2d 718, 720 (1982). In addition, "the introduction of toxic wastes into the land, amply provides local governmental units with an interest which is direct in every meaningful sense.'' *Id.* at 8, 452 A.2d at 721. This interest is immediate, not remote. "We need not wait until an ecological emergency arises in order to find that the interest of . . . the [township] faced with such a disaster is immediate.'' *Franklin Township,* 500 at 10, 452 A.2d at 722.

Petitioners next argue that the permitted area is inadequate for sludge disposal. We disagree.

Specifically, petitioners contend that the soils are not suitable for application of sewage sludge, and that the soils contain an excess of cadmium.

The EHB found, *inter alia,* that:

"5. Penn type soils predominate on the site and are suitable for the application of liquid sludge . . . .

30. The cadmium level in the soil is presently . . . within the DER guidelines.''

Our review of the record convinces us that these findings are supported by substantial evidence.

Kuehnle's permit application was reviewed by John F. Zwalinski, a Regional Soil Scientist for DER. Mr. Zwalinski testified that, as part of his review of the application, he first checked the site located on the Bedminster 7.5 minute United States Geological Survey (USGS) topographical map and also on the appropriate Bucks-Philadelphia County soil survey sheet number. He then checked the sludge chemical analysis presented in the application against DER's interim guidelines and calculated the limitations for metals and nitrate. Next, he conducted an on-site investigation. Mr. Zwalinski surveyed the site and noted any differences in soil parent materials and any differences in slope. In addition, he made fifteen borings using a soil auger. After examining the Soil Conservation Service (SCS) maps and the fifteen soil samples, Mr. Zwalinski concluded that there was an "overwhelming dominance" of Penn soils at the site and that "[a]ccording to the interim guidelines, these soils are suitable for sludge application applied at a rate that will satisfy 75 percent of the nitrogen requirements for the proposed crop."[3]

Furthermore, test results performed by DER soil laboratory, Lancaster Laboratories, Inc. and Penn State University, on soil samples taken from the site, indicated that the cadmium level was between .2 and .9 pounds per acre, well below DER guidelines of 3.0 pounds per acre.

Finally, petitioners argue that a Clean Streams permit was required before sludge could be applied to the Kuehnle site. We disagree.

Section 201 of the Clean Streams Law,[4] provides that: "No person or municipality shall place or per-

---

[3] Notes of Testimony, P. 1141.

[4] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §691.201.

mit to be placed, or discharge or permit to flow, or continue to discharge or permit to flow, into any of the waters of the Commonwealth, any sewage except as hereinafter provided in this act.''

In the instant case, the Board found that "the permitted application rate . . . [would] not result in water pollution runoff. . . ."[5]

Dr. John Walker, an Environmental Protection Agency physical scientist, testified that:

> If you were applying a rate of [sludge] application for a crop that was 75 percent of what the crop needed, [as in the instant case,] and you did this year after year, I don't know how you could cause a situation in which you are going to build up nitrogen levels in the soil such that you are going to have pollution problems, a groundwater pollution problem or a surface water pollution problem from that application.[6]

Although there was testimony to the contrary, judgments as to the credibility and the weight of the evidence are for the EHB. *A. H. Grove & Sons, Inc. v. Department of Environmental Resources*, 70 Pa. Commonwealth Ct. 34, 452 A.2d 586 (1982).

For the aforementioned reasons, we affirm the order of the EHB which upheld DER's granting of the Solid Waste Disposal Permit. We reverse that part of the order which held that Bedminster Township lacked standing to appeal.

## ORDER

AND Now, January 18, 1985, the order of the Environmental Hearing Board, Docket No. 77-128-W, dated September 26, 1980, is affirmed insofar as it relates to the granting of Solid Waste Disposal Per-

---

[5] Finding of fact number 8.

[6] Notes of Testimony, P. 1531.

mit No. 600015. The order of the Board is reversed insofar as it denied Bedminster Township standing to appeal.