### 530 A.2d 514

Haycock Township, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources and Richard L. Landgreen, Permittee, Respondents.

Argued December 9, 1986, before President Judge CRUMLISH, JR., Judge BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Mary C. Eberle, Jaczun, Grabowski & Leonard,* for petitioner.

*Brian J. McCullough, Connolly, Chandor & McAndrews,* for respondent, Richard Landgreen.

OPINION BY JUDGE BARRY, August 13, 1987:

This is an appeal by Haycock Township, petitioners, (Township) from an order of the Environmental Hearing Board (Board) upholding an order of the Department of

Environmental Resources (DER) which directed the Township to revise its Official Sewage Facilities Plan in a manner which would provide for landowner Richard Landgreen's (Landgreen) proposed single residence spray irrigation system.

In July of 1981, Landgreen, owner of a 5.5 acre parcel of land in Haycock Township, was advised by a soil scientist whom he hired to determine the suitability of his property for an on-site septic system that his property was suitable *only* for a low flow single residence spray irrigation system. DER was requested to review the lot for such a purpose. It concluded that the site met DER's design guidelines. In December of 1981, Landgreen presented to the Township a proposed revision to the Township's Official Sewage Facilities Plan. The Township did not respond. Landgreen petitioned DER under Section 5 of the Pennsylvania Sewage Facilities Act (Sewage Facilities Act),[1] and its implementing regulation, 25 Pa. Code §71.17(a),[2] to order the Township to revise its official plan. In response to DER's request, on August 13, 1982 the Township submitted objections to DER concerning Landgreen's proposed official plan revisions. However, on February 24, 1983, DER ordered the Township to submit a revision to its Official Sewage Facilities Plan[3] because the Township's guide-

---

[1] Act of January 24, 1966, P.L. (1965), 1535, *as amended,* 35 P.S. §750.5(a).

[2] §71.17. Private request to revise or supplement plans.

(a) Any person who is a resident or property owner in a municipality may request the Department to order the municipality to revise or supplement its official plan where said person can show that the official plan is inadequate to meet the resident's or property owner's sewage disposal needs. The request to the Department shall contain a description of the area of the municipality in question and an enumeration of all reasons advanced by said person to show the official plan's inadequacy.

[3] See 25 Pa. Code §71.14(b), 71.6(a) and 71.16(b).

lines regulating single residence spray irrigation systems were inconsistent with the relevant provisions of the Sewage Facilities Act and the Clean Streams Law,[4] and that Landgreen's proposal *did* include sufficient details concerning site testing and suitability. DER also was of the opinion that the existing plan is inadequate to meet Landgreen's sewage disposal needs because the existing plan only provides for on-lot disposal systems when property is not suitable for an on-lot disposal system, and the plan does not provide for single residence spray irrigation systems.

On March 25, 1983, the Township appealed to the Board pursuant to 25 Pa. Code §71.17(d). On June 6, 1984, prior to the Board's evidentiary hearing, the Board denied the Township's Petition for Allowance to Enter the Premises for the Purpose of Taking Additional Soil Test.

The Township's appeal to the Board was divided into two separate proceedings. On October 2, 1984, the Board deciding on the preliminary issue, ruled that the Township could *not* refuse to revise its Official sewage Facilities Plan on the grounds that the proposed site is not in compliance with the Township's "guidelines" on spray irrigation systems when DER had already determined that the site was in compliance with DER's guidelines. On November 21, 1985, the Board addressed the Township's remaining issues on appeal and concluded that DER did not act illegally or abuse its discretion in ordering the Township to amend its Official Sewage Facilities Plan. This appeal followed. Our scope of review of decisions made by the Board is limited to determining whether the Board committed constitutional violations, errors of law, or whether any neces-

---

[4] The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §§691—721.17.

sary findings were unsupported by substantial evidence. *Pennsylvania Game Commission v. Department of Environmental Resources,* 97 Pa. Commonwealth Ct. 78, 509 A.2d 877 (1986). In addition, it must be noted that an administrative agency has wide discretion in performing its administrative duties including promulgating rules, regulations and standards and this Court will not interfere with the exercise of this discretion absent proof of fraud, bad faith or blatant abuse of discretion. *Id.*

The Township urges us to reverse the Board's ruling that any revised plan be evaluated by DER pursuant only to the requirements of 25 Pa. Code §71 (ADMINISTRATION OF SEWAGE FACILITIES PROGRAM) and §91 (relating TO WATER RESOURCES) and requests that the proposed plan revision be subject to the requirements of Chapters 73, as well as Chapters 71 and 91. The Board ruled that Chapter 73 applied only to *subsurface* absorption areas or retention in holding tanks and thus was inapplicable to the proposed above ground spray irrigation system. We agree with the Board. It is true that Chapter 73 contains general language which could feasibly be construed to apply to all community and individual sewage systems but we find more reasonable the Board's interpretation that the permit requirements of Chapter 71 are applicable alone. Landgreen was required to seek DER approval at two levels: the planning stage and the permit stage. Normally, in matters involving subsurface sewage discharge, the Chapter 71 *planning* and *permit* requirements apply. The Chapter 71 permit requirements incorporate the Chapter 73 design standards:

Section §71.31 reads:

The local agency shall issue a permit for an individual or community sewage system only when the site and the plans and specifications of such system are in compliance with the provi-

sions of this Chapter and of Chapter 73 of this Title.

However, sewage systems discharging to the surface are governed by the *planning* requirements of Chapter 71 and the *permit* requirements of Chapter 91 by virtue of Section 71.2(c) which reads:

> The provisions of this Chapter shall govern the issuance of all permits for individual and community sewage systems which employ renovation of sewage effluent in a subsurface absorption area or retention in a holding tank. Permits for individual and community sewage systems discharging to the surface or to the waters of the Commonwealth shall be governed by Subchapter A of this Chapter and Chapter 91 of this Title.

As this section shows the permit requirements of Chapter 71 are not applicable because Chapter 91's requirements apply. Thus, Chapter 73 simply does not apply.

Since we agree that Chapter 73 is not applicable and the Township does not argue that the proposed revisions are inadequate under Chapters 71 and 91, we move to the Township's argument that the guidelines used by DER in determining whether Landgreen's property was generally suitable for a spray irrigation system were invalid. The Township maintains that these guidelines are invalid because they had the force and effect of rules and regulations and must be published. Were these guidelines actually regulations, publication would be required. We do not believe they are anything more than informal guidelines. The DER used its own single resident spray irrigation system design guidelines in making its determination of the suitability of Landgreen's lot. In addressing this argument the Board stated:

> In determining that Landgreen's lot was suitable for a spray irrigation system, DER ap-

plied guidelines for single residence spray irrigation systems established by the DER Bureau of Water Quality Management, but never promulgated as regulations by the Environmental Quality Board. Since these guidelines were not promulgated as regulations, the Board cannot accord them a presumption of validity. Old Home Manor v. DER, 1983 EHB 396; Cambria Coal Co. v. DER, 1983 EHB 30; Allegheny County Sanitary Authority v. DER, 1982 EHB 29. Failure to publish the requirements as a regulation does not, however, make the requirement unenforceable. The Board reviews DER's application of policies or guidelines on a case by case basis, and substitutes its discretion for that of DER if the Board finds that DER abused its discretion. Warren Sand & Gravel Company v. DER, 20 Pa. Cmwlth. 186, 341 A.2d 556 (1975). The Township did not present any evidence that demonstrated that these guidelines were inadequate. DER's review of a sewage disposal system at the planning stage is to determine whether the site in question is generally suitable for the proposed system. DER's guidelines for single residence spray irrigation systems set forth specific standards for soils, slopes, application rates, buffer zones, and minimum property size, but DER's review at this stage is for general suitability. Thus, the Board concludes that DER's use of these guidelines to determine general suitability in this case was reasonable.

The design guidelines in question cover such areas as: soil suitability, slopes, ground water tables, recommended application rates, specific recommended buffer zones, suggested minimum property sizes, sewage treatment plant requirements, general site requirements

and other general recommendations related to the spray system equipment. The guidelines have an informal format and use mostly general language and they were employed at the very early stages of planning to determine general site suitability for a plan revision. This leads us to conclude that they are nothing more than advisory and thus not improperly utilized by DER. *Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 374 A.2d 671 (1977). Nor, in the absence of evidence of other criteria which may have been used in the place of the design guidelines for single residence spray irrigation system, do we believe it was an abuse of discretion for DER to apply them to the present set of circumstances. Matters of technical expertise deserve and require from this court a measure of deference. *Pennsylvania Game Commission.*

The Township next maintains that the landowner's lot suitability does not even meet the minimum requirements of the guidelines. In comparing the evidence produced by Landgreen at the Board hearing with the guidelines, the Board, in its opinion on pages 13, 14, 15 and 16, persuasively shows that the guidelines were substantially met and that the Township failed to produce evidence to the contrary.

Our review of the record shows these findings to be supported by substantial evidence. Although the DER expert testified that in some places the slope exceeded the recommended maximum of four percent for "poorly drained soils", the Board accepted the water quality sanitarian's testimony that the average slope was less than four percent and that grading of the portions exceeding four percent could bring the entire lot into conformity with the sloping requirements. Apparently, the Township's only other allegation of a failure to adhere to the guidelines involves the depth to mottling evaluations (measurement of the ground water table). The

Township maintains that all parties agreed that less than ten inches of depth to mottling is unsuitable for the proposed spray irrigation system and posits that DER did not provide sufficient information to determine the depth to mottling of the soils. However, the testimony of Mr. Paul Marmo,[5] the DER representative who provided depth to mottling readings, indicates a depth to mottling of ten to fifteen inches. He described on the record the procedure he employed in taking these samples and provided a general plan of the area to the Board to illustrate the spacing of the test holes. The Board accepted this as sufficient indicia of the depth to mottling and made a corresponding finding of fact.[6] We believe that this finding is supported by substantial evidence. The only deviation from the guidelines is the de minimis variation from the sloping requirements to which, inasmuch as this appeal involves a determination of general site suitability precedent to an official plan revision, the Board, not improperly, attached little significance, especially in light of the availability of remedial measures.[7]

---

[5] N.T. p. 211.

[6] Finding of Fact No. 9 reads:

Marmo reviewed the soil profiles from the ten test holes dug by Kemmerer, and augered between the test pits. The depth of the auger holes was approximately twenty inches and the soil was extremely dry (powdery) and very friable. He found that the soils were Mount Lucas silt loam and Towhee, and mottling was exhibited at fifteen to sixteen inches. Estimated slope was three to five percent. Sloping was toward a low spot at the rear of the property. Vegetative cover was of the agriculture field type.

[7] The Township argues that the prohibitive provisions of Chapter 73 make the availability of remedial measures (grading by heavy machinery) irrelevant but we have ruled that Chapter 73 requirements are not applicable.

The Township next argues that Landgreen's failure to submit the plans by a registered professional engineer in accordance with 25 Pa. Code §91.23(b)[8] is fatally defective. The soil scientist, Jimmy Kemmerer, testified that he was not a Registered Professional Engineer yet he prepared and completed Component IV of the Applicant's Site Approval Application and submitted it to DER. The Board ruled that Landgreen's failure to have the plans prepared and submitted by a professional engineer was not fatally defective because DER had expressed satisfaction with the plan after making an independent review of Component IV knowing that a soil scientist, not an engineer, had prepared it. But the Board's primary reasoning was that these requirements pertained to plans and specifications under the Clean Streams Law rather than to a determination of general site suitability at the planning stages. We agree and, in doing so, note that the Township does not dispute Mr. Kemmerer's extensive experience in dealing with DER on the types of spray irrigation systems in question.[9] This court has recognized the expertise of soil scientists in sewage disposal matters. *Bedminster Township et al. v. DER et al.*, 87 Pa. Commonwealth Ct. 148, 486 A.2d 570 (1985). However, we do caution the Board and DER that our holding with respect to this issue is based, in large part, upon the extremely limited and preliminary phase of this entire process and the resulting unfair prejudice to Landgreen which would result in holding otherwise. It is not intended to minimize the

---

[8] 91.23(b)—Plans, reports and specifications shall be prepared by a licensed professional engineer authorized to practice in this Commonwealth.

[9] Although the Township questions the accuracy of Mr. Kemmerer's submissions, the Board stated that the Township failed to present evidence before the Board to show that the plans were inaccurate.

Section 91.23(b) requirements. This court recognizes that complicated and legitimate technical considerations which were considered in limiting permission to submit these plans to professional engineers especially at the permit phase when the sewage facility is ready to commence operation.

Finally, the Township argues that it was unduly prejudiced at the Board hearing due to the Board's June 6, 1984 order denying it permission to enter the property and take additional soil tests.

25 Pa. Code 21.111(a) reads:

> (a) Discovery shall be available to parties without leave of the Board upon written notice served upon each party or his counsel of record for a period of 60 days after the appeal or complaint has been filed with the Board. Discovery requested subsequent to the 60 day period shall be available only upon leave of the Board.

The Township argues that the soil testing is relevant to the proceedings at hand and the Board's order seriously hindered its ability to contest the suitability of the soils, and the methodology of the testing performed by Landgreen and DER. The Township, however, did not request Landgreen's permission to enter onto the premises until May 15, 1984, some fourteen months after its appeal to the Board. The Township's request was, therefore, subject to the discretion of the Board under 25 Pa. Code §21.111(a). The Board, without explanation, denied the request. Although we would have preferred that the Board would have documented its reasons for the denial and could remand for such an explanation, we recognize that there are several apparent grounds upon which the Board could have denied the request, not the least of which is the delay of the Township in seeking permission to enter onto the premises and the additional delay the testing would take. The

Township has offered no explanation for its failure to request permission to take such tests sooner. We note that it was on or about January 30, 1984, that the Township was informed by DER of the revisions to Mr. Kemmerer's original plan; yet it was over three months before the Township requested permission to take its own tests. The Board thus did not abuse its discretion in denying this request.

In sum, we hold that the Township has failed to convince us that the Board, in affirming the order of the DER directing the Township to revise its Official Sewage Facilities Plan, abused its discretion, acted illegally or in bad faith or that any findings were unsupported by substantial evidence in the record.

ORDER

NOW, August 13, 1987, the order of the Environmental Hearing Board dated the 21st of November, 1985 directing Haycock Township to revise its Official Sewage Facilities Plan in compliance with the order of DER of February 24, 1983, is affirmed.