644 A.2d 255

**XUN IMAGING ASSOCIATES, LTD., and Xun Diagnostic Associates, Ltd., Petitioners,**

v.

**DEPARTMENT OF HEALTH, DIVISION OF NEED REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 1, 1994.

Decided June 16, 1994.

David W. Thomas, for petitioners.

James T. Steele, Jr., for respondent.

Before CRAIG, President Judge, KELLEY, J., and RODGERS, Senior Judge.

KELLEY, Judge.

■ XUN Diagnostic Associates, Ltd. (XUN) appeals from the Pennsylvania Department of Health's, Division of Need Review, denial of XUN's petition to intervene and amended petition to intervene.

The facts of this case are as follows. On October 23, 1992, Rudolph L. Buck, M.D., sent a letter of intent to the Department of Health (Department), Division of Need Review, requesting a determination of non-reviewability on his proposal to establish a business entity to acquire an MRI unit to be located in a free-standing facility. Reproduced Record (R.) at 1a–2a.

A letter of intent is required under the Certificate of Need Program pursuant to the Health Care Facilities Act[1] (Act) and its accompanying regulations. The regulations set forth the requirements regarding information to be provided to the Department before any person enters into a contractual arrangement to acquire major medical equipment. *See* 28 Pa. Code § 401.3(c).

In accordance with the regulations, Dr. Buck informed the Department that he believed that his purchase of the major medical equipment was not a new institutional health service requiring a certificate of need as defined in section 701 of the

1. Act of July 19, 1979, P.L. 130, *as amended,* 35 P.S. §§ 448.101–448.904.

Act [2], 35 P.S. § 448.701, in that he proposed to establish a business entity to acquire an MRI unit to be located in a freestanding facility; the project was to cost approximately $1,050,000.00; it would not be located in a health care facility; nor would the services be offered to inpatients of a health facility.

By letter dated November 16, 1992, the Department responded to Dr. Buck's letter of intent requesting a determination of reviewability under the certificate of need program by issuing a determination of non-reviewability. The department determined that Dr. Buck's project did not require certificate of need review "because no capital expenditure will be made by or on behalf of a health care facility, it will not result in the addition of a new health service by or on behalf of a health care facility or in or through a health care facility, and the equipment will not be used to service inpatients of any health care facility." R. at 3a. The Department's response to Dr. Buck stated further that "[i]t is necessary to notify the Division of Need Review in writing of any change in the proposed project's scope or cost" before proceeding with the project. *Id.*

Thereafter, extensive amendments were enacted to the Act by the General Assembly effective December 18, 1992. Consequently, the requirements for the Certificate of Need Program changed significantly in that an acquisition of major medical equipment after December 18, 1992, is now reviewable and subject to a certificate of need. *See* 35 P.S. § 448.701.

On February 12, 1993, counsel for Dr. Buck wrote a letter to the Department requesting confirmation that Dr. Buck's acquisition of an MRI did not require certificate of need review based on the Department's letter of non-reviewability issued November 16, 1992. R. at 5a. In addition, Dr. Buck's

2. Specifically, section 701(a)(5) of the Act, in effect at the time of Dr. Buck's letter of intent, stated that a person did not have to obtain a certificate of need from the Department if they acquired major medical equipment, so long as such equipment was not owned or located in a health care facility and would not be used to provide services for inpatients of a health care facility and a notice had been provided to the Department. 35 P.S. § 448.701(a)(5).

letter of February 12 informed the Department that due to financing arrangements and the status of renovations, the actual operational date of the project had been delayed but that the facility would be in service in the near future. *Id.*

A representative of the Department informed Dr. Buck's counsel orally on March 23, 1993 that the project remained non-reviewable. R. at 6a. This oral confirmation was followed by a written confirmation, dated March 24, 1993, from the Department to Dr. Buck's counsel. The March 24, 1993 written confirmation stated that "all proposed projects which the Department of Health determined to be not subject to Certificate of Need review prior to the effective date (December 18, 1992) of the amendments to the ... Act remain not reviewable, providing there is no change in the project as originally proposed." R. at 20a.

On May 11, 1993, counsel for XUN formally requested an appointment to examine and copy the application and materials relating to Dr. Buck's request for determination of reviewability. R. at 7a. At the time of XUN's examination of the materials, the March 24, 1993 letter from the Department to Dr. Buck's counsel was not contained in the Department's file.

Thereafter, on or about June 8, 1993, XUN filed with the Department a petition to intervene. R. at 9a–18a. XUN alleged in its petition to intervene that Dr. Buck's letter of February 12, 1993 was a request for a determination of non-reviewability subject to the provisions of the amended Act to which the Department had not yet rendered an adjudication. *Id.* Dr. Buck filed a response to XUN's petition on June 11, 1993. R. at 21a–27a.

On or about June 18, 1993, XUN filed an amended petition to intervene requesting, *inter alia,* leave to intervene *nunc pro tunc* as an interested party in Dr. Buck's February 12, 1993 application for a determination of reviewability. R. at 28a–63a. Dr. Buck filed a response to XUN's amended petition on June 23, 1993. R. at 64a–70a.

The Department denied XUN's petitions to intervene by letter dated June 25, 1993. R. at 71a–73a. The Department

determined that there was no current request for non-reviewability before the Division of Need Review. In reaching this determination, the Department found that (1) its letter of November 16, 1992 was its decision in this matter; (2) Dr. Buck's letter of February 12, 1993 was not a new request for a determination of non-reviewability subject to the amended provisions of the Act effective December 18, 1992, but merely a request to confirm the Department's decision of November 16, 1992; and (3) its response to Dr. Buck's February 12, 1993 letter in March 1993 was not a new or different decision. *Id.*

On appeal to this court from the Department's June 25, 1993 determination, XUN raises the following issues for review:

1. Does jurisdiction of an appeal from the denial of petitions to intervene in an application for a determination of reviewability properly lie in the State Health Facility Hearing Board or in the Commonwealth Court;

2. Is a change of circumstances letter, which an applicant is required to submit and which permits the Department to re-evaluate a previous decision as to whether or not a proposed project is reviewable, an application for a determination of reviewability within the meaning of 35 P.S. § 448.506(a);

3. Do the amendments to the Act require the Department to provide: (a) notice to interested persons that an application for a determination of reviewability has been filed, and (b) notice to interested persons of the mailing of any written decision on such an application;

4. Does the failure by the Department to provide notice that an application for a determination of reviewability has been filed constitute a breakdown in the administrative process, the equivalent of fraud, requiring the Department to grant XUN leave to intervene *nunc pro tunc;* and

5. Does the failure by the Department to provide notice of a written decision on an application for a determination of reviewability and/or the failure to place a copy of such a

written decision in the docket file constitute a breakdown in the administrative process, the equivalent of fraud, requiring the Department to grant XUN leave to intervene *nunc pro tunc.*

This court will first address the issue of jurisdiction. XUN contends that jurisdiction of its appeal from the Department's denial of its petitions to intervene properly lies with this court and not the State Health Facilities Hearing Board (board). The Department does not dispute this specific contention.[3]

The jurisdiction of the board is governed by sections 502 and 506 of the Act, *as amended,* effective December 18, 1992. 35 P.S. § 448.502; 35 P.S. § 448.506. Section 502(a)(1) provides that the hearing board shall have the power and duty "[t]o hear appeals by the applicant or interested persons from departmental decisions on applications for certificates of need or amendments thereto and from determinations of reviewability." 35 P.S. § 448.502(a)(1).

Section 506(a), appeals to the hearing board, provides that:

(a) A decision of the department on an application for a certificate of need or amendment thereto or a determination of reviewability may be appealed within 30 days of the mailing date of the decision by the applicant or by any interested person who requested a public meeting on the application and participated in the public meeting or can fully document and make available material information which is relevant to the review and which was not available during the period when the department completed its review. . . .

35 P.S. § 448.506(a).

XUN, citing *Southern Chester County Medical Center v. Department of Health,* 90 Pa.Commonwealth Ct. 284, 494 A.2d 885 (1985), argues that the clear language of the Act cannot be disregarded to enlarge the jurisdiction of the board. In

**3.** The Department argues that this court lacks jurisdiction because (1) there is presently no case or controversy before the court and (2) this court may not hear appeals from competitors concerning determinations of non-reviewability.

*Southern Chester,* this court examined the language of section 502 of the Act which clearly omitted appeals from Department determinations of non-reviewability and determined that jurisdiction of such an appeal was in this court and not the board. The *Southern Chester* court stated that "[w]e find that the statutory provision for the Board's authority is clear, and we will not disregard that clear language...." *Southern Chester* at 287–88, 494 A.2d at 887.

Likewise, in determining whether jurisdiction of an appeal from a departmental determination denying petitions to intervene lies with the board, this court must abide by the clear language of the Act. Sections 502(a)(1) and 506(a) specifically empower the board to hear appeals on applications for certificates of need or amendments thereto and from determinations of reviewability. 35 P.S. § 448.502(a)(1); 35 P.S. § 448.506(a). The plain language of these sections does not empower the board to hear appeals on petitions to intervene.

However, to appeal a determination on a petition to intervene to this court, such determination must be an adjudication as defined in 2 Pa.C.S. § 101. We hold that such a determination is an adjudication as it is a final administrative decision affecting the rights of the proposed intervenor. Accordingly, jurisdiction of an appeal from a department determination on a petition to intervene rests, therefore, with this court.

The question that must be addressed next in this appeal is whether the February 12, 1993 letter from Dr. Buck's counsel to the Department constitutes a new application for a determination of reviewability or non-reviewability. XUN argues that the February 12, 1993 letter is a change of circumstances letter, as required by the Department's November 16, 1992 determination of non-reviewability, explicitly requesting a determination of reviewability in light of certain changes to Dr. Buck's project. To support this argument, XUN contends that under the regulations, the dates of project commencement and completion are required elements of a letter of intent and that Dr. Buck was required to inform the Depart-

ment of any change in the commencement or completion dates. After receiving Dr. Buck's change of circumstances letter, XUN asserts, the Department could render a new decision after evaluating the change of circumstances; therefore, said letter is an application for a determination of reviewability.

In response, the Department argues that the February 12, 1993 letter is not a change of circumstances letter requesting a determination of reviewability but merely a request for confirmation of its previous determination rendered in November 16, 1993. The Department asserts that there is nothing in the February 12, 1993 letter to indicate a substantial change in scope or circumstance from the original letter of intent submitted by Dr. Buck on October 23, 1992. We agree with the Department's characterization of the February 12, 1993 letter.

Dr. Buck was informed by the Department in its November 16, 1992 letter to notify the Department of any change in the project's *scope* or *cost.* R. at 3a. We believe that informing the Department that the commencement of a project already deemed non-reviewable by the Department has been delayed does not constitute a change in the project's scope. To be deemed non-reviewable under the provisions of the Act in effect in October 1992, a person, who notified the Department by a letter of intent, was permitted to acquire major medical equipment which was not owned by or located in a health care facility to be used to provide service for inpatients of a health care facility without securing a certificate of need. *See* 35 P.S. § 448.701(a)(5) prior to December 18, 1992 amendments.

It is reasonable to conclude, therefore, that a change in the project's scope would include a substantial change in the project triggering a re-evaluation of the determination of non-reviewability, such as a change from serving outpatients only to also treating inpatients or a change that would result in the MRI being owned or located in a health care facility.

A review of the February 12, 1993 letter to the Department reveals that Dr. Buck was not informing the Department of any substantial changes to his project. The February 12, 1993 letter from Dr. Buck's counsel stated in its entirety that:

I am writing to confirm that the above referenced determination that Dr. Rudolph L. Buck's acquisition of a MRI on behalf of an entity being formed, does not require certificate of need review based on your Department's letter of non-reviewability issued November 16, 1992.

Subsequent to receiving the Department's letter and in reliance on that determination, Dr. Buck has continued implementation of this service to the McKeesport area. The equipment has been ordered and renovations are under way at 4304 Walnut Street, McKeesport. This equipment will not be located in a health facility or provide services to inpatients.

Due to the financing arrangements underway and the status of renovations, the actual operational date has been somewhat delayed but the facility will be in service in the near future.

R. at 5a.

It is clear that Dr. Buck was merely requesting a confirmation of a prior determination of non-reviewability. This occurred in February 1993 after extensive changes were enacted to the Act governing Dr. Buck's type of project. The fact that Dr. Buck at the same time informed the Department that the date of commencement had been somewhat delayed did not constitute informing the Department of changes in the project's scope such that the letter resulted in a new application for reviewability.

It is undisputed that the Department did not treat the February 12, 1993 letter as a new application for reviewability but merely as a request for confirmation of its November 16, 1992 determination of non-reviewability of Dr. Buck's project. This was in keeping with the Department's permitted discretion in performing its administrative duties such as determining what action constitutes a change in scope which would then require the Department to re-evaluate a prior decision. *See Haycock Township v. Department of Environmental Resources,* 108 Pa.Commonwealth Ct. 466, 530 A.2d 514 (1987). Absent proof of fraud, bad faith or blatant abuse of discretion,

this court will not interfere with the Department's exercise of this discretion. *Id.*

It is true that Department regulations require that a letter of intent contain the expected date of commencement and completion. *See* 28 Pa.Code § 401.5(a)(1)(v); 28 Pa.Code § 401.14(b)(5). However, as the Department points out, once a project receives a determination of non-reviewability, there is no requirement under the current Act or its regulations or under the prior Act and its regulations, that the Department be informed of the date of the commencement of operations.

Accordingly, we hold that the Department was correct in its determination that the February 12, 1993 letter from Dr. Buck's counsel to the Department was not a new request for reviewability subject to the December 18, 1992 amendments to the Act. Consequently, there is no application for reviewability in which XUN may intervene. Therefore, the relevant determination in this matter is the Department's November 16, 1992 decision. XUN does not argue or allege in its petitions to intervene that it is appealing that determination of non-reviewability.

Accordingly, the Department's denial of XUN's petitions to intervene is affirmed.[4]

## ORDER

NOW, this 16th day of June, 1994, the denial by the Department of Health, Division of Need, dated June 25, 1993, of the petition to intervene and the amended petition to intervene filed on behalf of XUN Diagnostic Associates, Ltd., is hereby affirmed.

---

4. Based on our holding that there is no application for reviewability upon which XUN may intervene, this court need not address XUN's remaining issues on appeal.