## Nunez v. Dept. of Transportation

C.P. of Lehigh County, no. 2008-C-1369.

*Timothy Peter Wile,* for appellants.
*Joel West Williams,* for appellee.

FORD, *J.,* October 22, 2010—By two administrative orders, the Commonwealth of Pennsylvania, Department of Transportation ("PennDOT"), indicated it permanently suspended Nunez Auto, Inc.'s license as an emission inspection station and imposed fines totaling $15,000 on that corporation for improperly furnishing emission inspection certificates and for inspection record keeping

violations. By two additional administrative orders, PennDOT indicated it permanently suspended Larry Nunez's license as an official emission inspector for the same acts and omissions. Nunez Auto and Mr. Nunez appealed these suspensions to this court. By order entered on June 16, 2010, I granted the appeal in part and denied it in part. Nunez Auto and Mr. Nunez then filed the present notice of appeal challenging the order of June 16, 2010. As I explain in this opinion prepared pursuant to Pa.R.A.P. 1925(a), the appeal lacks merit and should be dismissed.

## Procedural History

This litigation arose from two audits of Nunez Auto, Inc. conducted by PennDOT in April and September of 2006. These audits focused on three separate vehicle emission inspections performed by appellants in 2006. PennDOT contends that, based on model year of these vehicles, appellants should have performed" on board diagnostic (OBD) tests" on them, rather than the visual emission tests that were actually performed.

On August 21, 2007, a hearing examiner for the Pennsylvania Emissions Team conducted two administrative hearings on the two audits of Nunez Auto, Inc., For the convenience of Mr. Nunez, both hearings were conducted on the same day, one immediately after the other.

On March 19, 2008, PennDOT sent appellants a set of administrative orders which specified the sanctions imposed on them as a result of an audit performed in April of 2006. As to Nunez Auto, its certificate of appointment as an official emission inspection station was suspended for a period of one year for improper certificates of

emission inspection on two of the vehicles. PennDOT also imposed $2,500 in fines on Nunez Auto for these violations. Additionally, it imposed another one year suspension and a $2,500 fine on Nunez Auto for improper record keeping. As to Mr. Nunez, PennDOT suspended his license as an official emission inspector for one year for improper certificates of emission inspection on the same two vehicles. It also suspended his license for a second year for improper record keeping.

On March 20, 2008, PennDOT sent another set of administrative orders to appellants regarding a third vehicle. These orders announced the sanctions imposed on appellants as a result of an audit performed in September of 2006. In the order addressed to Nunez Auto, PennDOT permanently suspended the corporation's certificate of appointment as an official emission inspection station and imposed a $5,000 fine for furnishing a fraudulent certificate of emission inspection. PennDOT also imposed an additional $5,000 fine on Nunez Auto for fraudulent record keeping. In the order sent to Mr. Nunez, PennDOT permanently suspended his license as an official emission inspector for furnishing the inspection certificate for the third vehicle. Mr. Nunez's suspension was also based on his committing an improper record keeping violation.

On March 26, 2008, Nunez Auto and Mr. Nunez filed statutory appeals from PennDOT's administrative orders of March 19, 2008, and March 20, 2008. By statute, the suspension and fine imposed against the station had to be appealed to the court of common pleas. See 42 Pa.C.S. § 933(a)(1)(ii). The suspension and fine imposed against Mr. Nunez, personally, required a direct appeal to the Commonwealth Court of Pennsylvania. See *Mihadas v.*

*Department of Transportation*, 741 A.2d 249, 250 n.1. (Pa. Cmwlth. 1999). The penalties were appealed to the proper courts. The commonwealth court, acting on a motion by Mr. Nunez, transferred his appeal to this court to be heard with the Nunez Auto appeal.

PennDOT orally moved to quash Nunez Auto and Mr. Nunez's single appeal during a hearing on this issue conducted on June 1, 2009. PennDOT made a jurisdictional argument that appellants erred in filing one appeal from the two separate sets of administrative orders issued to both Mr. Nunez and Nunez Auto. By order dated September 10, 2009, I denied the motion to quash the appeal.

A hearing on the merits of the appeal was conducted on March 1, 2010. Counsel for PennDOT presented as a witness John Griscom who conducted the audits of Nunez Auto in April and September of 2006. Mr. Nunez also testified at the hearing.

On June 16, 2010, I entered an order granting the appeal in part and denying it in part. As PennDOT did, I found that appellants improperly furnished emission inspection certificates and that appellants committed improper record keeping. For these, I imposed the same sanctions as PennDOT previously did. PennDOT, in its brief submitted after the March 1, 2010, hearing, stated that it was no longer attempting to prove fraudulent record keeping. Therefore, by what was in essence an agreement, I reversed PennDOT's finding that appellants committed fraudulent record keeping and vacated all sanctions imposed on appellants as a result of that finding.

On July 14, 2010, appellants filed this appeal to the

Commonwealth Court of Pennsylvania. Appellants challenge the order I entered on June 16, 2010, granting in part and denying in part their appeal from PennDOT's administrative orders.

In response to an earlier order, appellants filed their "concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)" (concise statement) on August 6, 2010.

### Findings of Fact

The following findings of fact were ascertained from the evidence presented at the hearing conducted on March 1, 2010. I based the order of June 16, 2010, and the accompanying opinion on these findings.

1. Larry Nunez worked at Nunez Auto, Inc., in 2006 as an official emission inspector certified by PennDOT.

2. Mr. Nunez conducted business through Nunez Auto, Inc., his Pennsylvania Corporation located at 826 Hanover Avenue, Allentown, Pennsylvania. Nunez Auto was also certified by PennDOT as an official emission inspection station.

3. Mr. Nunez knew that all vehicles with model years of 1996 or newer were required to undergo an OBD test.

4. A PennDOT licensed state emission inspector receives training as to the meaning of a vehicle identification number (VIN).

5. From reviewing a VIN, a PennDOT licensed state emission inspector can discern the model year of a vehicle. The tenth item in a VIN indicates a vehicle's model year.

6. When he was working for Nunez Auto, Inc., in 2006, Mr. Nunez knew that the tenth item of a VIN indicated that vehicle's model year.

7. On March 18, 2006, Mr. Nunez performed an emission inspection on a 1996 Honda Accord, VIN 1HGCD5632TA216478. As part of the inspection, Mr. Nunez scanned the bar code from the PennDOT issued registration card for the vehicle into his computer system, which was connected to the PennDOT controlled Vehicle Inspection Information Database. Mr. Nunez claimed that the computer inaccurately indicated that the model year for the vehicle was 1995. Additionally, Mr. Nunez reviewed the VIN for this vehicle. From the VIN, he knew or should have known that the correct model year for the vehicle was 1996. Although Mr. Nunez knew or should have known that he was required to perform an OBD test on this vehicle based on its model year, he instead performed a visual emission inspection and gas cap emission test. After conducting these tests, he issued a certificate of emission inspection for the vehicle.

8. On March 30, 2006, Mr. Nunez performed an emission inspection on a 1997 Ford Aerostar, VIN 1FMCA11U4VZA03757. Mr. Nunez scanned the bar code from the PennDOT-issued registration card for the vehicle into his computer system, which was connected to the PennDOT controlled vehicle inspection information database. Mr. Nunez claimed that the computer inaccurately indicated that the model year for the vehicle was 1995. Mr. Nunez also examined the VIN for the Ford and thereby knew or should have known that the correct model year for the vehicle was 1996. Although he knew or should have known that he was required to perform an OBD test

on this vehicle based on its model year, he performed only a visual emission inspection and gas cap emission test. Following these tests, Mr. Nunez issued a certificate of emission inspection for the vehicle.

9. On August 7, 2006, Mr. Nunez performed an emission inspection on a 1997 Cadillac Brougham, VIN 1G6ET1290VU616766. Mr. Nunez scanned the bar code from the PennDOT issued registration card for the vehicle into his computer system, which was connected to the PennDOT controlled vehicle inspection information database. Mr. Nunez claimed that the computer inaccurately indicated that the model year for the vehicle was 1995. During the inspection, Mr. Nunez also reviewed the VIN for this vehicle. From the VIN, Mr. Nunez knew or should have known that the actual model year for the vehicle was 1997. Mr. Nunez knew or should have known that the Cadillac had to undergo an OBD test based on its model year. However, he performed only a visual emission inspection and gas cap emission test on the vehicle. After these tests, Mr. Nunez issued a certificate of emission inspection for the vehicle.

10. On April 24, 2006, John Griscom, a quality assurance officer with the Pennsylvania Emissions Team, performed an audit of Nunez Auto, Inc.. He determined that the corporation, acting through Mr. Nunez, had fraudulently entered a lower model year for the Honda Accord and the Ford Aerostar when inspecting those vehicles in March of 2006.

11. Mr. Griscom performed a second audit of Nunez Auto, Inc., on September 21, 2006. Through this audit, Mr. Griscom concluded that Nunez Auto fraudulently entered a lower model year for the Cadillac Brougham when Mr.

Nunez inspected that vehicle in August of 2006.

## Discussion and Conclusions of Law

In their Concise Statement, appellants make the following contentions: (1) the court's finding that Mr. Nunez had actual knowledge of the correct model years of the vehicles in question is not supported by evidence of record; (2) the court erred in concluding that appellants improperly furnished certificates of emission inspection to the vehicles in question; (3) the court erred in not finding that PennDOT improperly imposed "recidivist" (appellants' word) punishments (permanent license suspensions) on appellants; (4) the court's finding that appellants committed improper record keeping is not supported by evidence of record; and (5) the court erred in ruling that "75 Pa.C.S. § 4706(b.1)(v) provided statutory authorization to PennDOT to promulgate administrative regulations imposing civil monetary fines upon emission stations for violations of PennDOT's emission regulations." All of these contentions lack merit.

## Evidence of Mr. Nunez's Actual Knowledge

Appellants contend that the evidence of record does not support my finding as to Mr. Nunez's actual knowledge. Specifically, appellants challenge my conclusion that Mr. Nunez actually knew that the Honda Accord was a model year 1996, the Ford Aerostar was a model year 1997, and the Cadillac Brougham was a model year 1997. Because the evidence presented at the hearing conducted on March 1, 2010, supports my findings, this contention should be rejected.

During the hearing, PennDOT called Mr. John Griscom, the quality assurance officer from the Pennsylvania

200

Emissions Team. Mr. Griscom was the inspector who actually performed the two audits of Nunez Auto. On direct examination, he testified that, like Mr. Nunez, he was a licensed state emissions inspector. (N.T.,3/1/10, p. 16.) He further explained that state emission inspectors receive training with regard to the meaning of an automobile's VIN. *Id.* Mr. Griscom testified that the tenth item of a VIN indicates a vehicle's model year. (N.T., 3/1/10, p. 13.) Specifically, he testified that a tenth item that is a "T" indicates a model year of 1996, and that a tenth item of "V" indicates a model year of 1997. As noted above, the VIN for the Honda Accord was 1HGCD5632TA216478; the VIN for the Ford Aerostar was 1FMCA11U4VZA03757; and the VIN for the Cadillac Brougham was 1G6ET1290VU616766. I found the testimony of Mr. Griscom to be credible and accurate.

Mr. Nunez testified at the March 1, 2010, hearing. He stated that he inspected the 1996 Honda, the 1997 Ford and the 1997 Cadillac and checked the VIN for each of these vehicles. (N.T., 3/1/10, pp.33-34.) Mr. Nunez claimed that he obtained model year information for the three vehicles by scanning the bar code from the PennDOT issued registration card for each vehicle in his computer system, which is connected to PennDOT's network. He testified that he did not use the model year information provided in the VINs to check the accuracy of the model year information provided by the computer. (N.T., 3/1/10, pp. 47-48.) Mr. Nunez stated that he never received any training on the meaning of a VIN and that he did not know that information concerning a vehicle's model year could be ascertained from a VIN. Mr. Nunez admitted that he reviewed the VIN for each of the three vehicles in question.

Mr. Nunez's initials appear on page 8 of exhibit C-3 introduced at the March 1, 2010 hearing, an inspection record that includes the 1997 Cadillac. On the seventh vehicle inspection report from the top of the page, it expressly lists the VIN for the Cadillac and labels it as a "97 Cadillac CP."

In my fact-finding role, I assessed Mr. Nunez's credibility. His claim that he could not tell a vehicle's year from its VIN is unbelievable. He also was not credible when he testified he did not know the years of these vehicles.

The record supports my finding about Mr. Nunez's actual knowledge of the years of the vehicles. Credibility assessment was a factor in making this finding.

*Finding of improper furnishing of an inspection certificate*

Appellants next challenge my finding that appellants improperly furnished emission inspection certificates for the three vehicles. The evidence presented at the hearing established the violations.

A court of common pleas hears appeals from an agency adjudication de novo. See *Rutkowski v. Department of Transportation*, 780 A.2d 860 (Pa.Cmwlth. 2001); and *Department of Transportation v. Hays*, 36 Pa.Cmwlth. 522, 388 A.2d 1126 (1978). PennDOT has the burden of proving violations of the Motor Vehicle Code and its regulations by a preponderance of the evidence. *Firestone Tire & Service Center, O.I.S. No. 798 v. Department of Transportation*, 871 A.2d 863, 867 (Pa.Cmwlth. 2005).

Under 67 Pa.Code § 177.427, Subsection (3), "[a]

person may not. . . furnish, loan, give or sell certificates of emission inspection and approval to any...other person except upon an emission inspection *performed in accordance with this chapter.*" 67 Pa.Code § 177.427(3) (emphasis added). Vehicles with a model year of 1996 or newer are required to undergo an OBD test. 67 Pa.Code § 177.51(f)(2).

Mr. Nunez testified that he only tested all three vehicles with visual emission inspections. (N.T., 3/1/10, pp. 34-35.) It is undisputed that the Honda Accord was a 1996 model year vehicle, and the Ford Aerostar and Cadillac Brougham were 1997 model year vehicles. The required test under the Pennsylvania Code for these three vehicles was the OBD test. 67 Pa.Code § 177.51(f)(2). Mr. Nunez did not perform OBD tests on them.

Appellants contend that performing the wrong tests was an understandable mistake. This argument is based upon Mr. Nunez's repeated assertion that his computer, connected to the PennDOT controlled vehicle inspection information database, incorrectly indicated that these three vehicles were all model year 1995. Even if that statement were true, it does not change the outcome. Under 67 Pa.Code § 177.38(a)(7), "[i]t is the responsibility of the owner of an emission inspection station...to assume full responsibility, *with or without actual knowledge*, for...[e]very emission inspection conducted at the emission inspection station." 67 Pa.Code § 177.38(a)(7); see *Strickland v. Department of Transportation*, 132 Pa.Cmwlth. 605, 609, 574 A.2d 110, 113 (1990) (discussing the strict liability nature of the statute).

Whether there was a scienter requirement or not, Mr. Nunez was not credible in his claim of a mistake in

determining the model years of the vehicles.

Because PennDOT presented sufficient evidence to demonstrate that the appellants furnished emission inspection certificates to the three cars without performing the required tests, I acted properly in affirming PennDOT's findings.

*Application of "Recidivist" Punishments to Appellants*

Appellants next argue that this court erred in upholding PennDOT's decision to treat appellants as repeat offenders and impose permanent revocations of their inspection licenses where appellants were never previously found to have violated PennDOT regulations prior to the issuance of the administrative orders of March 19, 2008, and March 20, 2008. In support of this argument, appellants generally state that "[p]ursuant to the recidivist philosophy that is encompassed in PennDOT's emission inspection regulations, an inspection station or inspector must first be sanctioned for a prior offense before either the station or inspector can be sanctioned as a second offender." Contrary to the appellants' contentions, this is not an issue of "recidivist" sanctions, but of PennDOT's interpretation of its own regulation.

Through 75 Pa.C.S. § 4706(b.1)(1)(v), the Pennsylvania legislature granted PennDOT the power to promulgate regulations governing emission testing "which shall include a schedule of offenses." Pursuant to this statutory authorization, PennDOT enacted regulations outlining a schedule of offenses relating to improper emission testing. These regulations are codified at 67 Pa.Code § 177.602(a). Under the regulations, PennDOT is authorized to impose a "1 year [suspension] and $2,500 fine" for a first offense of furnishing an emission inspection certificate without

inspection, and a "permanent [suspension] and $5,000 fine" for a second offense. 67 Pa.Code § 177.602(a).

At its discretion, PennDOT treated appellants' offenses pertaining to the Honda Accord and the Ford Aerostar as a single "first offense" and addressed this offense at the first of two hearings conducted on August 21, 2007, before the Pennsylvania Emissions Team. PennDOT imposed a penalty for this first offense through the administrative order of March 19, 2008. PennDOT elected to treat the appellants' offenses relating to the Cadillac Brougham as a "second offense." The Pennsylvania Emissions Team conducted a second, separate hearing on August 21, 2007, albeit right after the first hearing, to address this offense. Through the administrative order of March 20, 2008, PennDOT imposed a penalty on appellants for the second offense.

In deciding to treat the conduct pertaining to the Cadillac Brougham as a "second offense," PennDOT interpreted the language of its own regulation, 67 Pa.Code § 177.602(a). Administrative agencies, such as PennDOT, have broad discretion with respect to interpretations of their own regulations. *Spicer v. Department of Public Welfare*, 58 Pa.Cmwlth. 558, 560-61, 428 A.2d 1008, 1009 (1981). An agency's interpretation of its own regulations and regulatory scheme is entitled to deference by the courts. *Mathies Coal Co. v. Department of Environmental Resources*, 522 Pa. 7, 18, 559 A.2d 506, 512 (1989); and *Groce v. Department of Environmental Protection*, 921 A.2d 567, 573 n.7 (Pa.Cmwlth. 2007). Further, PennDOT's interpretation of 67 Pa.Code § 177.602(a) was reasonable. Nowhere in that regulation does it state that an emission

inspector can be found to have committed a "second offense" only if there is an administrative or judicial finding of committing an offense prior to committing the subsequent offense. For this reason, PennDOT acted within its discretion in treating the conduct pertaining to the Cadillac Brougham as a second offense.

### Finding of Improper Record Keeping

Appellants next challenge my determination that appellants engaged in improper record keeping. Contrary to appellants' assertion, PennDOT successfully demonstrated that appellants engaged in improper record keeping. (As was previously explained in the procedural history, PennDOT conceded that it was not attempting to prove that appellants committed fraudulent keeping.)

The Pennsylvania Commonwealth Court defined improper record keeping as "not in accordant with fact, truth, or right procedure, i.e., incorrect [or] inaccurate." *Tropeck v. Department of Transportation, Bureau of Motor Vehicles*, 847 A.2d 208, 212-13 (Pa.Cmwlth. 2004).

Mr. Nunez claimed that the PennDOT controlled Vehicle Inspection Information Database gave him incorrect model year information for the vehicles. As discussed previously, Mr. Nunez was able to and did obtain accurate model year information on the three vehicles from the VINs. Additionally, the MV-431 for the Cadillac entered into evidence bears Mr. Nunez's initials next to the information concerning the vehicle indicating that it was a 1997 model. Although Mr. Nunez knew or should have known that the three vehicles had to undergo OBD testing, he performed only visual emission inspections and gas cap emission tests on the vehicles. By documenting these improper inspections, Mr. Nunez committed

improper record keeping.

*PennDOT's Authority to Impose Monetary Sanctions*

Finally, appellants contend that I erred in finding that PennDOT possessed the authority to impose monetary sanctions for these violations.

Administrative agency regulations, such as those authorizing the imposition of sanctions, are afforded a presumption of validity and reasonableness. *Northampton, Bucks County, Municipal Authority v. Department of Environmental Resources*, 114 Pa.Cmwlth. 339,345,547 A.2d 802, 804 (1988) (citing *Department of Environmental Resources v. Pennsylvania Power Company*, 490 Pa. 399, 416 A.2d 995 (1980)). Administrative agencies have wide discretion in the performance of their duties. *Id.* at 344, 547 A.2d at 804 (citing *Haycock Township v. Department of Environmental Resources*, 108 Pa.Cmwlth. 466, 530 A.2d 514 (1987)).

Appellate courts will only interfere in agencies' exercise of discretion on proof of fraud, bad faith or blatant abuse of discretion. *Id.* To determine the validity of an administrative agency regulation, Pennsylvania courts apply a three-pronged test: "(1) the promulgation of the regulation must have been within the granted power of the administrative agency, (2) the regulation was issued pursuant to proper procedure, and (3) the regulation is reasonable." *Id.* at 344-45, 547 A.2d at 805 (citing *Pennsylvania Human Relations Commission v. Uniontown Area School District*, 455 Pa. 52, 313 A.2d 156 (1973)).

This test is satisfied here. First, the issuing of the emission inspection regulations, including the penalty provisions, was a proper exercise of authority. Under 75

Pa.C.S. § 4724(a), PennDOT is authorized to suspend emission inspector certificates for violations of any regulations governing the inspectors. Also, PennDOT was authorized by statute to promulgate regulations governing emission testing "which shall include a schedule of offenses punishable by fine of up to $20,000." 75 Pa.C.S. § 4706(b.1)(1)(v). A schedule of penalties is set forth in 67 Pa.Code § 177.602(a), which provides for a "1 year [suspension] and $2,500 fine" for a first offense of furnishing an emission inspection certificate without inspection, and a "permanent [suspension] and $5,000 fine" for a second offense. 67 Pa.Code § 177.602(a). These administrative regulations are afforded a presumption of reasonableness and they read as logical and necessary for PennDOT to regulate the emission control program.

Appellants have not demonstrated anything improper about the regulations. From the evidence presented, PennDOT demonstrated that its application of the regulations to the appellants was justified.

For all of the above reasons, the appellants' appeal lacks merit and should be dismissed.